THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY

*v.*

ROBERT SCHMELLING.

*Opinion filed June 19, 1902—Rehearing denied October 9, 1902.*

1. ESTOPPEL—*when party is estopped to urge that act was negligence per se.* If a defendant railroad company procures an instruction to be given which leaves the jury to consider the alleged fact that the plaintiff alighted from a moving train in determining whether he was in the exercise of due care, it cannot afterwards urge that such act was negligence as a matter of law.

2. CARRIERS—*carrier should provide safe means of access from its stations.* It is the duty of a carrier to provide a safe means of access to and from its regular stopping places, and a passenger has a right to assume that the place adopted by the carrier for discharging its passengers at such stopping place is safe, and it is not the duty of passengers to look out for trains approaching on other tracks.

3. SAME—*carrier is bound to observe highest degree of care toward passengers.* It is the duty of a carrier to use the highest degree of care which is practicable, to provide its passengers with a safe passage from its trains.

4. SAME—*what tends to show negligence in providing place for alighting.* Evidence that the carrier provided no platform at a regular stopping place; that there were other railroad tracks on both sides, from five to six feet away, and that the place for alighting was five or six inches below the level of the tracks and not boarded over, tends to show negligence on the part of the carrier in providing a place for alighting.

5. SAME—*relation of carrier and passenger does not cease at moment of alighting.* The relation of carrier and passenger does not terminate until the passenger has alighted from the train and left the place where passengers are discharged, and the duty of the carrier

continues until the passenger has had a reasonable time to leave the place where he alights.

6. SAME—*when failure to provide proper alighting place contributes to injury.* If the alighting place provided by a carrier at a regular stopping place is so close to the tracks of another company as to render it dangerous to stand there while a train is passing on such other track, the failure to provide a proper alighting place contributes to an injury received by a passenger who has just alighted and who is struck by a train of the other company while standing between the tracks of the two companies.

7. APPEALS AND ERRORS—*when an erroneous instruction will not reverse.* The giving of an instruction authorizing the jury to find for the plaintiff if he has proven "all the *material* allegations of his declaration," is not ground for reversal though erroneous in leaving the jury to decide what allegations are material, where other instructions tell them what allegations must be proven.

*Chicago Terminal R. R. Co.* v. *Schmelling,* 99 Ill. App. 577, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

This is an action on the case, brought by Robert Schmelling, defendant in error, against the Chicago, Burlington and Quincy Railroad Company, and plaintiff in error, the Chicago Terminal Transfer Railroad Company. Some of the allegations of negligence in the two counts of the declaration were joint as to both defendants, and also several as to each of them. A plea of not guilty was filed by each defendant. At the close of the plaintiff's evidence, he entered a non-suit as to the Chicago, Burlington and Quincy Railroad Company. Subsequently, the trial resulted in verdict and judgment in favor of the defendant in error. Upon appeal to the Appellate Court, the judgment of the superior court of Cook county was affirmed. The present writ of error is prosecuted from such judgment of affirmance.

On August 8, 1898, defendant in error boarded an early morning train of plaintiff in error, as a passenger, at Fifty-first street in Chicago for the purpose of riding to

Twenty-sixth street in that city. Plaintiff in error's train, upon which defendant in error was thus a passenger, consisting of about four cars besides the engine, was what was called a workingmen's train, used for the purpose of carrying workingmen early in the morning to their work. The train arrived at its stopping place at Twenty-sixth street a few minutes after six o'clock, and, in dismounting from the train at that point, defendant in error was struck by the engine of a freight train upon the track of the Chicago, Burlington and Quincy railroad, and suffered the injury, for which the present suit is brought. For some seventy or seventy-five feet south from the point, where the defendant in error was struck, the track of the plaintiff in error and the track of the Chicago, Burlington and Quincy Railroad Company run parallel and directly south, but, when this distance of seventy or seventy-five feet is reached, both tracks make a curve to the west. The westerly rail of the westerly track of the Chicago, Burlington and Quincy railroad was distant toward the east from the easterly rail of the easterly track of the plaintiff in error about one and one-half or two feet according to some of the testimony, about six feet according to other evidence, seven or eight feet according to some of the witnesses, and as much as eight or nine feet in the opinion of one of the witnesses. The evidence tends to show that the defendant in error, when he went upon the train, paid his fare and took his seat in the first car. When the car reached Twenty-sixth street, the conductor called out the station, known as Twenty-sixth street, at the back door in the rear end of the car. Defendant in error, when he heard the announcement of the conductor, got up and walked out upon the front platform, and he says: "The train stopped and I got off." If the train had not actually stopped when defendant in error got off, it was "slowing up" to make the stop. He alighted from the easterly front platform of the front car of the train, and moved directly east. He was in the habit of going

to work on that train in the morning, and had been in the habit of doing so for nearly a year and a half. He worked at that time in a lumber yard east from the Twenty-sixth street station, to reach which he would go one block to Western avenue, and then up Blue Island avenue to the lumber yard. The step of the platform, where he dismounted, was about eighteen inches or two feet from the ground. He walked two steps, and was about to step upon the track of the Chicago, Burlington and Quincy Railroad Company when some one called to him, and he turned around toward the north and was struck by a locomotive of the Chicago, Burlington and Quincy Railroad Company, about two or three minutes, as he says, after the time when he jumped off the platform.

It is admitted, that trains on the road of the plaintiff in error regularly stopped at Twenty-sixth street; that there was a railroad crossing just south of the line of Twenty-sixth street; that every train going north stopped close up to the crossing; that every train going south stopped close up to Twenty-sixth street; that the train that morning stopped at the usual place of stopping to let on and off passengers going north; and that this stopping place is advertised as such on the company's time-tables.

Just east of the track of plaintiff in error, from which defendant in error alighted, are two more tracks of the Burlington and Quincy Railroad Company, and east of them a switch track of the same company. Just west of the track of the plaintiff in error, on which the car, in which defendant in error was a passenger, stood, are another track of the plaintiff in error and also a side or switch track of the same company. Just north of the place of the accident, two tracks of the Santa Fe road run at right angles across the tracks of the plaintiff in error and the Chicago, Burlington and Quincy railroad. Just north of the Santa Fe tracks is Twenty-sixth street, but there is no sidewalk on the south side of Twenty-

sixth street. In the middle of Twenty-sixth street are two tracks, on which run electric cars east and west. The business of defendant in error was that of a bricklayer. At this Twenty-sixth street stopping place plaintiff in error had no depot or platform of any kind or description. The ground between the track of plaintiff in error and the track of the Chicago, Burlington and Quincy railroad was between five and seven inches below the level of the tracks; it was not boarded, but composed of stone and sand. Just how much space there was between the train of plaintiff in error, as it stood at the time of the accident, and the Chicago, Burlington and Quincy train, as it passed, is not altogether clear from the evidence. One of the witnesses says, that there was just enough room for a man to stand. The freight train of the Chicago, Burlington and Quincy Railroad Company consisted of some sixteen or eighteen empty stock cars and one way-car. The tender of the engine of the latter train was in front. The train of the plaintiff in error going north overtook the Chicago, Burlington and Quincy train and passed it, but immediately began slowing up, so that it had "slowed up" and stopped for the Santa Fe crossing while the Chicago, Burlington and Quincy train was passing it. It is admitted that the place, where the train of plaintiff in error stopped, was not only a regularly advertised stopping place of the train in question, but was a statutory stopping place.

JESSE B. BARTON, for plaintiff in error.

KICKHAM SCANLAN, and EDGAR L. MASTERS, for defendant in error.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

If the acts of negligence, charged in the declaration against the Chicago, Burlington and Quincy Railroad Company alone, be eliminated, the acts of negligence, charged

in the declaration against the plaintiff in error, are that it did not provide a suitable platform, or other means, for passengers to safely alight from its cars at Twenty-sixth street, and failed to keep its railroad at a safe and suitable distance from that of the Chicago, Burlington and Quincy Railroad Company, and also failed to provide means for crossing the Chicago, Burlington and Quincy railroad in safety.

*First*—The first point, made by the plaintiff in error, is that the trial court erred in overruling its motion to take the case from the jury at the close of all the evidence, and in refusing to give its instruction, then asked and offered in writing, directing the jury to find it not guilty. This instruction was properly refused, if there was evidence tending to show the right of the defendant in error to a recovery, because in such case there must be a submission to the jury. (*Landgraf* v. *Kuh*, 188 Ill. 484; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Baddeley*, 150 id. 328; *Chicago and Eastern Illinois Railroad Co.* v. *Filler*, 195 id. 9).

The plaintiff in error contends, that there is no evidence, tending to show that, at the time of the injury, the defendant in error was in the exercise of ordinary care for his own safety. As we understand the argument of counsel upon this branch of the case, his contention is that defendant in error was guilty of negligence, as matter of law, upon two grounds. The first ground is the charge, that the defendant in error alighted from the car while it was in motion. In support of this position authorities are referred to holding, in substance, that it is negligence for a passenger to alight from a moving train of cars, the motive power of which is steam. (*Cicero Street Railway Co.* v. *Meixner*, 160 Ill. 320, and cases cited).

In the case at bar, there was evidence to the effect that, when the defendant in error alighted from the car on which he was riding, the train had stopped. There is other testimony, tending to show that, while the train

had not actually stopped, it was moving very slowly. One of the witnesses testifies, that the train of the plaintiff in error, on which the defendant in error was riding, stopped about seven feet south of the Santa Fe tracks, so that there were seven feet clear between the front of the engine and the Santa Fe tracks; and, at the same time, he states that the train was about ten or fifteen or twenty feet south of the Santa Fe tracks when the defendant in error was struck. It follows, that the train moved a distance only of from three to thirteen feet northward before it stopped after defendant in error alighted from it. It must, therefore, have been moving very slowly. But whether he alighted from the train after it stopped, or while it was "slowing up" for the purpose of stopping, was a question of fact for the jury to determine. The judgment of the trial court, and the judgment of the Appellate Court affirming it, settle this question of fact, so far as we are concerned. The plaintiff in error asked no instruction from the court, holding that the alighting of the defendant in error from the train while it was in motion, if he did alight while it was in motion, constituted negligence in law. On the contrary, the plaintiff in error asked, and the court gave in its behalf an instruction to the following effect:

"If the jury believe from the evidence that the plaintiff left the car of the defendant Chicago Terminal Transfer Railroad Company while the same was in motion, and if they further believe from the evidence that he knew of the proximity of the tracks of the Chicago, Burlington and Quincy Railroad Company, they may take these facts into consideration in determining whether plaintiff was exercising due care and caution for his own safety."

Inasmuch as the plaintiff in error asked and the court gave an instruction which left it to the jury to take into consideration the fact, if it was a fact, that the defendant in error alighted from the train while it was in motion in determining whether he was in the exercise of

due care and caution for his own safety, it cannot be urged now and here by the plaintiff in error, that such fact was negligence *per se,* or negligence as matter of law.

The second ground, upon which it is charged that defendant in error was guilty of a want of due care for his own safety, is that he did not stop, and look along the tracks of the Chicago, Burlington and Quincy Railroad Company, to see whether a train was approaching before he stepped upon one of the rails of the track of that company. The evidence is clear and positive that defendant in error did not see the approach of the train which struck him. The engineer and fireman of the train, from which he alighted, swear that they did not see the approach of the train, which struck him, until the train was upon him, or not more than six feet from him. The curve in the tracks at this point prevented a clear view of an approaching train on the parallel track. The defendant in error had not taken any position upon the track of the Chicago, Burlington and Quincy Railroad Company; he had merely put his foot upon the west rail of the track with a view to crossing to go to Twenty-sixth street, but, upon receiving a warning, he took his foot off the rail, and was standing in the space between the track of the plaintiff in error and the track of the Chicago, Burlington and Quincy Railroad Company when he was struck. The engine, or tender, or car, which struck him, projected over into the space between the two tracks about a foot and a half. This court has often decided, that the failure to look and listen before crossing a railroad track does not constitute negligence as a matter of law, but is merely a circumstance, which the jury may take into consideration in determining whether or not the party injured was guilty of negligence. (*Chicago and Alton Railroad Co.* v. *Harrington,* 192 Ill. 9). Here, however, the plaintiff in error did not ask any instruction, so far as we have been able to discover, which holds that, as matter of law, it was negligence in the defendant in error not to look and

listen for an approaching train. The refusal of such instruction, if it had been asked, would not have been error, because it was not the duty of the defendant in error, when alighting from the train to look out for engines or cars that might be approaching upon the track east of the track, on which the train, from which he had alighted, stood. It was the duty of the plaintiff in error to provide a safe means of access to and from its station at Twenty-sixth street for the use of its passengers; and the defendant in error had a right to assume, that the place, adopted for discharging its passengers at that point, was safe. (Thompson on Carriers, 261; *Pennsylvania Co.* v. *McCaffrey*, 173 Ill. 169; *Lake Shore and Michigan Southern Railway Co.* v. *Ward*, 135 id. 511; *Chicago and Alton Railroad Co.* v. *Wilson*, 63 id. 167; *Chicago and Alton Railroad Co.* v. *Winters*, 175 id. 293). In *Pennsylvania Co.* v. *McCaffrey, supra*, we said (p. 176): "A passenger is justified in assuming, that the company has, in the exercise of due care, so regulated its trains, that the road will be free from interruptions or obstructions, when passenger trains stop at the depot to receive and deliver passengers. In leaving the train the passenger. has a right to assume, that the company will not expose him to any danger, which, by the exercise of due care, can be avoided; and that the company has done its duty in the matter of providing him safe landing."

This brings us to the second contention of the plaintiff in error upon this branch of the case, namely, that the evidence does not tend to show any negligence on its part, which resulted in injury to the defendant in error. We are of the opinion that there is evidence, tending to show such negligence. The law is well settled that the carrier must use the highest degree of care, which is practicable, in order to provide passengers with a safe passage from its trains. As is said by Mr. Bishop in his work on Non-contract Law, (sec. 1086): "The tracks around the platforms and places for entering and leav-

ing the cars  *  *  *  should be made safe and kept so."
Here, it is admitted that there was a regular statutory
stopping place at Twenty-sixth street, where the train,
upon which the defendant in error was riding, stopped.
But there was no depot or platform either on the east or
west side of the train. Passengers, who alighted from
the train, were obliged to step upon the ground into a
space between five and seven inches below the level of
the tracks, not boarded but filled with stone and sand,
not wider than four, five or six feet, located between the
tracks of two railroad companies, and subject to being
narrowed still further by the projection of cars for a
distance of a foot and a half over such space upon each
side thereof. We are not prepared to say that, in view of
the character of the place, where passengers were thus
obliged and invited by the plaintiff in error to alight for
the purpose of approaching Twenty-sixth street, there
was such a safe means of departure from its trains, as
plaintiff in error was bound, under the law, to furnish to
its passengers. Upon this subject the jury were properly
instructed by the court on behalf of both parties. The
court instructed the jury, on behalf of the defendant in
error, that a railroad company in the business of carry-
ing passengers is bound to exercise due care, consistent
with the nature of its business and practical operation
of its railroad, in providing a safe and convenient mode
of access to its trains and departure from its trains at
stations or stopping places, used by it as places for
taking on and discharging passengers from its trains.
The court also instructed the jury, in behalf of plaintiff
in error, and at its request, that, if they believed from
the evidence that the defendant in error paid his fare to
the conductor of the plaintiff in error for a passage from
Fifty-first street to Twenty-sixth street, then it became
the duty of the plaintiff in error to carry him to its usual
place of stopping nearest Twenty-sixth street, and to
furnish him with a safe place to alight from the train,

and a safe passageway from such place of alighting to Twenty-sixth street. These instructions were in harmony with the authorities hereinbefore referred to.

*Second*—It is alleged by the plaintiff in error, in the second place, that defendant in error was not a passenger of the plaintiff in error at the time the accident occurred. Counsel for plaintiff in error does not state in what way the question thus presented arises; but, while it is true that it is a question of law what facts will create the contract relation of carrier and passenger, yet it is the duty of the court to give a proper instruction, informing the jury what facts will be sufficient evidence of the contract, when the existence of such relation is in controversy. (*Chicago and Eastern Illinois Railroad Co.* v. *Jennings,* 190 Ill. 478). In the case at bar, such instructions were given. The duty of a carrier to its passengers is not only to exercise the highest degree of care and prudence in carrying them to their destinations, but also to afford them reasonable opportunities to leave the trains of the company with safety. (*Chicago and Eastern Illinois Railroad Co.* v. *Jennings, supra; Pennsylvania Co.* v. *McCaffrey, supra*). The relation of carrier and passenger does not terminate, until the passenger has alighted from the train and left the place where passengers are discharged, and the duty of the carrier to its passenger continues, until the passenger has had a reasonable time in which to leave the depot or alighting place. What is such reasonable time must often depend upon the circumstances of the particular case. (4 Elliott on Railroads, sec. 1592). In *Pennsylvania Co.* v. *McCaffrey, supra,* we said (p. 173): "This relation between a passenger and a railroad company does not cease upon the arrival of a train at the place of the passenger's destination, but the company is still bound to furnish him an opportunity to safely alight from the train. It is its duty, not only to exercise a high degree of care while the passenger is upon the train, but also to use the highest degree of

care and skill, reasonably practicable, in providing the passenger a safe passage from the train." In the case at bar, when the defendant in error was injured, he was still upon and within the narrow space between the railroad tracks, which was the only place which the plaintiff in error had provided for him to stand upon, when he alighted from the train. Therefore, we are not prepared to say that defendant in error had ceased to be a passenger. Laying down proper definitions of what constituted the relation between carrier and passenger, the instructions on both sides left it to the jury to determine, whether such relation existed between plaintiff in error and defendant in error at the time of the accident.

The juxtaposition of the tracks rendered it dangerous to stand or walk between them while trains were passing, and, hence, the failure to provide a proper place for alighting contributed to the injury, even though the immediate and direct cause of the injury was the blow from the engine of the Chicago, Burlington and Quincy Railroad Company. The fact, that defendant in error was struck by an engine of the Chicago, Burlington and Quincy Railroad Company, does not absolve plaintiff in error, inasmuch as its negligent conduct caused the defendant in error to be placed in a position where he would be so struck. There may be several substantive causes of an accident, but, if one which is proximately connected with it is proven, it is sufficient. Proximate cause in law is a cause, from which a man of ordinary experience and sagacity can foresee that the result may probably follow. (*American Express Co.* v. *Risley*, 179 Ill. 295; *City of Dixon* v. *Scott*, 181 id. 116; *City of Rock Falls* v. *Wells*, 169 id. 224). "It is well settled that, where the injury is the result of the negligence of the defendant and that of a third person; or of the defendant and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an

efficient cause of the injury." (*Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242).

*Third*—The third point, insisted upon by the plaintiff in error, is that the first instruction given in behalf of the defendant in error is erroneous. By that instruction the court told the jury that, if the plaintiff had proven "all the material allegations of his declaration by a preponderance of the evidence, in manner and form as he has alleged them in his declaration, he is entitled to recover in this case." The objection to the instruction is, that it leaves it to the jury to determine what allegations of the declaration are material. In *Toledo, St. Louis and Kansas City Railroad Co.* v. *Bailey*, 145 Ill. 159, it was held that such an instruction was undoubtedly erroneous, upon the ground that the question, what the material allegations of a declaration are, is a question of law, and should not be submitted to the jury. · But we are of the opinion that this instruction could have been productive of no harm, for the reason that other instructions given to the jury, on behalf of both the parties, fully informed them what facts must be proven, in order to entitle the plaintiff to recover. Quite a number of instructions, asked by the plaintiff in error and given for it, told the jury that, in order to entitle the defendant in error to a recovery he must have been in the exercise of due care and caution for his own safety; and other instructions told them that, in order to justify a recovery, the proof must show that the plaintiff in error was guilty of such negligence as contributed to the accident. Some of these instructions, in stating what acts would show a failure to exercise due care and caution, and what acts would not constitute negligence, were really more favorable to the plaintiff in error than the established principles of the law would justify.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*