## Chicago City Railway Company v. Edward A. Enroth.

### Gen. No. 11,212.

1. QUESTIONS OF LAW—*when, deemed waived.* Questions as to whether the plaintiff in an action on the case for personal injuries was guilty of contributory negligence, and as to whether his injury was the result of the negligence of a fellow-servant, are deemed to have been waived as questions of law, where the defendant caused the trial court to submit such questions to the jury as questions of fact.

2. REMARKS OF TRIAL COURT—*when, ground for reversal.* Where counsel upon cross-examination is directing his questions to matters pertinent and material, a remark as follows: "It is just as important as it is to ask him what he had for breakfast," is, in a close case, ground for reversal.

3. CONDUCT OF COUNSEL—*when, cannot be complained of.* An appellant will not be heard to complain of improper language and conduct on the part of opposing counsel, where his own counsel has been guilty of like improprieties.

4. ASSUMED RISK—*what, within the doctrine of.* Where a servant knows, or by the exercise of ordinary care should have known of the master's negligence, subjecting him to risks or dangers in the course of his employment, he assumes such risk and cannot recover for injury caused thereby unless there is some special circumstance shown, as that he acted in obedience to an order of the master or that there was a promise on the part of the master to remedy the defect complained of, or perhaps in some other cases. In view of this law, therefore, the ensuing instruction, which the court holds states a correct proposition of law, should not have been given in this case: "The court instructs the jury that it is a rule of law that the servant assumes the ordinary risks or dangers incident to his employment, but you are further instructed that risks or dangers, if any, which are caused or occasioned by the master's negligence are not ordinary risks or dangers of the servant's employment which he assumes within the meaning of the above rule."

5. PREPONDERANCE OF EVIDENCE—*when instruction upon, is not erroneous.* An instruction upon this subject which tells the jury that the preponderance of the evidence is "not alone determined by the number of witnesses," is not erroneous as telling the jury absolutely that such preponderance is to be determined by the number of witnesses testifying, but clearly implies that the number of witnesses is to be considered in determining upon which side such preponderance lies.

6. FELLOW-SERVANT—*when negligence of, does not preclude recovery.* Where there is evidence in the record which tends to show negligence on the part of the master, independent of any act of a fellow-servant, a recovery for the plaintiff may be sustained if such negligence of the

master was an efficient cause of the injury, notwithstanding the negligence of a fellow-servant may have contributed thereto.

7. INSTRUCTION—*right of court to refuse, which contains a correct abstract proposition of law.* Such an instruction, though correct in its statement of the law, may be refused by the court without the commission of error.

8. INSTRUCTION—*right of court to refuse, which substantially repeats another instruction given.* Such an instruction, though correct in its statement of the law, may be refused by the court without the commission of error.

9. INSTRUCTIONS—*practice of asking great number of.* Where appellant's counsel has asked, and the trial court, at his instance, has given a great number of instructions, the Appellate Court will consider such fact in connection with any error which may have been committed by the trial court in ruling upon such instructions, and will, in some instances, where a slight error has been committed, overlook the same in view of such fact.

10. VERDICT—*when, set aside on appeal.* Where a verdict in an action on the case for personal injuries is clearly and manifestly against the weight of the evidence, the Appellate Court will, upon appeal, reverse and remand the cause.

*Action on the case for personal injuries. Appeal from the Circuit Court of Cook County;* the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed March 17, 1904.

WILLIAM J. HYNES and SAMUEL S. PAGE, for appellant; NATHANIEL C. SEARS and MASON B. STARRING, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellee, while working as an employee of appellant repairing an elevator in its car barn in Chicago, received injuries January 13, 1896, by being thrown from a ladder on which he stood at the time, by reason of the alleged negligence of appellant's foreman in failing to block or fasten the counter-weights of the elevator, and in failing to give appellee any warning of the danger to which he was exposed. He brought suit the same year against appellant for his injuries, but in 1899, suffered an involuntary non-suit, and within one year thereafter this suit was commenced for a like purpose. There have been three trials, the jury dis-

agreeing and being discharged on the first two, but on the third trial appellee recovered a verdict and judgment thereon of $7,224, from which this appeal is taken.

For appellant it is claimed the judgment should be reversed for errors in procedure, and because the verdict is against the manifest weight of the evidence, and the damages are excessive. By reason of the conclusion reached it will not be necessary to and we do not decide as to the excessiveness of the damages, since a different result may be reached on another trial.

Under the point first mentioned appellant's counsel argue that the evidence shows conclusively that the appellee assumed the risk, and that he was guilty of contributory negligence, or that his injury was the result of the negligence of his fellow-servant. Appellant is precluded in this court from raising these questions, as matter of law, for the reason that they were all submitted as matters of fact to be determined by the jury, pursuant to instructions requested by appellant and given by the court. Consolidated Coal Co. v. Haenni, 146 Ill. 626; R. R. Co. v. Schmelling, 197 Ill. 619–25; Chicago J. Ry. Co. v. Scheller, No. 11,201 of this court, not reported.

The errors in procedure of which complaint is made were, first, improper remarks of the court and counsel during the trial. Only one remark of the court is claimed to be erroneous, to wit: "It is just as important as it is to ask him what he had for breakfast." This remark was made when counsel for appellant, on cross-examination of the appellee, desired to show by the latter that he had to go while working for appellant wherever he was called or directed. Appellee had testified on his direct examination to that effect, but a claim was made by his counsel, and it was alleged in the declaration, that at the time of his injury he was working outside the scope of his usual duties and was negligently ordered so to do by appellant. Although, in view of the evidence given by appellee, there was basis for the court's remark, we think it was improper and should not have been made, because the matter to which

it related was one of serious contest in the trial, and would naturally tend to impress the jury that the learned judge was of opinion that the evidence was of no importance whatever. We think that in a case so close upon its facts as this, in which two juries have disagreed, the statement of the court was error and cause for a reversal. Kennedy v. People, 44 Ill. 283-5; Perkins v. Knisely, 204 Ill. 275-80; City of Chicago v. McKechney, 205 Ill. 372-480; I. C. R. R. Co. v. Souders, 178 Ill. 585-91, and cases cited. Numerous remarks of appellee's counsel during the trial, and in his argument to the jury, commenting upon the conduct of opposing counsel, upon questions asked different witnesses by the latter, and in comments upon different items of the evidence, are claimed to be cause for reversal. It seems unnecessary to enumerate the different instances, for the reason that the court's ruling was, in each instance where the remark was improper, in support of the·objection thereto, and the conduct and remarks of appellant's counsel in a number of instances in the course of the trial were equally objectionable. Indeed, the trial judge very frequently, rightly, in our opinion, criticised counsel for the respective parties for their objectionable conduct and remarks, though he failed to take, as he should have done, prompt and effective measures to secure proper demeanor and language by both counsel. An appellant will not be heard to complain of improper language and conduct of his adversary, when he is guilty of like improprieties. Maxwell v. Durkin, 86 Ill. App. 264, affirmed 186 Ill. 547.

For appellant it is contended that there was reversible error in giving the second, third, fifth and seventh instructions for the appellee, but we think not, except as to the fifth. The second instruction states an abstract proposition, and no application is made of it to the case. It is not claimed that the instruction does not state the law correctly, but that it was calculated to mislead the jury. We think not, in view of other instructions in the case, though we think it might as well have been omitted. Certainly, it would have been no error to refuse it. The same is true of the third instruc-

tion. The fifth instruction is as follows: " 5. The court instructs the jury that it is a rule of law that the servant assumes the ordinary risks or dangers incident to his employment, but you are further instructed that risks or dangers, if any, which are caused or occasioned by the master's negligence are not ordinary risks or dangers of the servant's employment which he assumes within the meaning of the above rule." This instruction is said to be bad because it. tells the jury what, as a matter of fact, constitutes ordinary risks. We think not. The instruction states a correct proposition of law under the decisions of the Supreme Court. C. & A. R. R. Co. v. House, 172 Ill. 601–605; City v. Kostka, 190 Ill. 130–135; Slack v. Harris, 200 Ill. 96–108; C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492–504, and cases cited. Appellant requested and the court gave instructions to the effect that ordinary risks or dangers of his employment were assumed by the servant, and this instruction is a supplement to those given for appellant. We are inclined to think, however, the instruction should not have been given. The later expressions of the Supreme Court are to the effect in substance that if the servant knows, or, by the exercise of ordinary care, should have known of the master's negligence subjecting the former to risks or dangers in the course of his employment, he assumes such risk and cannot recover for an injury caused thereby, unless there is some special circumstance shown, as that he acted in obedience to an order of the master, or that there was a promise on the part of the master to remedy the defect complained of, or perhaps in some other cases. Heerey case, *supra;* Chicago, etc., Co. v. Mueller, 203 Ill. 558–64; Ill. Steel Co. v. Wierzbicky, 206 Ill. 201–5; Cichowicz v. International P. Co., 206 Ill. 346–9, and cases cited. In the Heerey case the court say : " An employee may have assumed a risk by virtue of his employment, or by continuing in such employment with knowledge of the defect and danger, and if he is injured thereby, although in the exercise of the highest degree of care and caution, and without any negligence, yet he can-

not recover." The court then enumerates the limitations on the doctrine of assumed risk, and says that in such cases "the question is one of contributory negligence on the part of the servant, depending upon whether the danger was so great that an ordinarily prudent person would not have encountered it. (Citing cases.) In those cases the question of assumed risk, which is founded in contract, is removed by the promise to repair, the coercion, or other sufficient cause, but the question of contributory negligence involved in every case still remains." In the Cichowicz case the court say: "A servant who knows that there are dangerous defects on premises where he works, and does not make complaint and ask for repairs or improvements necessary for his safety, assumes the risk involved, whether he acquires the knowledge before he enters the service or afterward. In either case he cannot continue in the employment and encounter the dangers without complaint or any assurance of safety or promise to repair or remedy the defect, and in case of injury hold his master liable." In the Mueller case the court say: "Extraordinary perils arising from the negligence of the master are not assumed unless they are known and voluntarily encountered, or are obvious, and expose the servant to dangers so imminent that an ordinarily prudent man would anticipate injury as so probable that in view of it he would not, even upon the order of the master, continue in the performance of his employment under like circumstances." The instruction may have misled the jury and caused them to believe that the appellee was entitled to recover for the master's negligence, without any reference to the knowledge of the servant of the risk or danger to which such negligence exposed him, and therefore should not have been given. As we understand these later decisions of the Supreme Court, the servant cannot recover for the master's negligence, although it is not an ordinary risk of the employment, if he has full knowledge and appreciation of the risk or danger to which he is thereby exposed. This is so because he assumes the risk and fails to exercise ordinary care.

The seventh instruction is not in our opinion erroneous for the reason claimed by appellant's counsel, that it tells the jury absolutely that the preponderance of the evidence is not to be determined by the number of witnesses testifying. The instruction says, "not alone determined by the number of witnesses," which clearly implies that the number of witnesses is to be considered in determining upon which side is the preponderance of the evidence.

We think there was no error in the refusal to give the forty-fourth, fiftieth and fifty-fourth instructions requested by the appellant, nor in the modification of the forty-first. The forty-fourth instruction was properly refused, because it tells the jury there could be no recovery for any act of Blaskin. There is evidence in the record tending to show negligence on the part of appellant independent of any act of Blaskin, who is claimed to be a fellow-servant of appellee. If this negligence was an efficient cause of the injury then appellant would be liable although Blaskin's negligence may also have contributed to the injury. C. & A. R. R. Co. v. House, 172 Ill. 606; Missouri, etc., Co. v. Dillon, 206 Ill. 145–55. The fiftieth instruction is abstract and no application to the facts of the case is made in the instruction. The fifty-fourth instruction is substantially covered by the eleventh given, and contains the same fault of the forty-fourth. The forty-first instruction is in substance covered by others given. Moreover, if it can be said that there was error in the court's rulings, in refusing or modifying these instructions, we regard it as slight, and may be attributed to the fault of appellant's counsel in requesting so many instructions. The court gave at his request twenty-six instructions as requested, and four others in modified form, in all thirty instructions of the forty-three requested. We think that by the forty-one good instructions given by the court, of which eleven were given at appellee's request, the jury was amply instructed on the issues in the case. The giving of numerous instructions has been often and justly condemned by this and the Supreme Court. W. C. S. R. R. Co. v. Manning, 70 Ill. App. 240–4, and cases cited;

I. & I. S. Ry. Co. v. Wilson, 77 Ill. App. 603–7; Chicago, etc., Ass'n v. Eddy E. Mfg. Co., 77 Ill. App. 204–12; I. C. R. R. Co. v. C. T. & T. Co., 79 Ill. App. 623–32.

The only remaining question is as to whether the verdict is against the manifest weight of the evidence. We will not undertake to discuss the evidence in detail; suffice to say, we have very carefully read it in view of the contentions of counsel of the respective parties, and it seems sufficient to state only a few matters and our conclusions from the whole evidence. Appellee was, when injured, about fifty-nine years of age, came from Finland to America in 1870, ever since which time and up to his injury he had worked as a carpenter, a car repairer, and sometimes at mill-wright work. He was employed by appellant first in the year 1884, and worked continuously for it up to the time of his injury, January 13, 1896, most of the time in the rebuilding and repairing of cars, but frequently in other work about its car shops, of whatever kind or nature he might be directed to do by his foreman. He was frequently directed to and did work in the removal, construction and repair of different elevators of the company in its different buildings in Chicago. The evidence clearly establishes that he was a competent, capable, handy and experienced man in doing the different kinds of work that he was called upon to do during his employment by appellant. Most if not all of the time until the occasion of the accident, when he did work about the elevators of appellant, he acted under the direction and supervision of some one experienced in that line of work. That appellee was familiar with the construction and mechanism of the elevator where he was working at the time of his injury, is, we think, established by a clear preponderance of the evidence, at least in so far as concerns the counterweights thereof, their use and the manner of their operation, in running the elevator. This elevator was used mainly for taking cars from one floor to another in appellant's car barn at Twentieth and Dearborn streets, Chicago, and was constructed with counterweights attached to a cable connected

with the elevator, which in part was an open platform about ten by thirty-four feet. The cable passed over pulleys overhead, and was connected with a cross-beam that was the upper part of the elevator. As the elevator moved up or down, the counterweights, which were enclosed in a casing on the opposite side of a brick wall near the elevator, went in the opposite direction. This casing had an open space in it near the ceiling of the first floor of about three or four feet, where the counterweights and cable could be seen when the elevator moved, but could not be seen by one on the platform of the elevator. On Saturday before the accident appellee was directed by his foreman, named Marsden, to repair an upright connected with the cross-beam of the elevator, which had been broken, but he was given no specific directions as to how the work should be done, nor was he told or warned of any danger or risk which he might incur in doing the work. In order to do the work required of appellee, it was necessary for him to remove certain bolts in the beam fastening it to the upright. Appellee commenced to do the work about three o'clock on Saturday afternoon, and worked until four o'clock, when he quit, and during that time, among other things, he assisted Marsden and others in raising the elevator, which stood at the lower floor of the barn, about four feet high, and placed wooden horses underneath it to sustain it in that position. One Blaskin was sent by the foreman to assist appellant at his work near seven o'clock on Monday morning. Blaskin worked about the platform of the elevator and under it in taking off nuts, removing rods and other things preparatory to the repairs to be done. Among other things appellee, between nine and ten o'clock that morning, took a ladder, placed the base of it upon the elevator platform and leaned it against the beam connecting with the upright overhead, and began loosening and removing certain bolts fastening the upright to the beam. When the last of these bolts was removed there was nothing to hold the beam which was attached to the elevator cable, and the beam went upward by reason of the counterweights attached to

the cable dropping. The beam carried the ladder which was hooked to it upwards, and appellee was thus thrown from the ladder to the platform below and injured. Appellee got the ladder himself, without direction from any one, and placed it in the position where he used it. He also got the horses on Saturday before, and placed them under the elevator preparatory to the work which he proceeded to do on Monday morning following. Whatever Blaskin did was done under appellee's direction. The clear preponderance of the evidence is that appellee knew about the counterweights, how they were attached to the cable and beam, that they were not blocked or fastened, and knew the manner in which they operated, and either knew, or by the exercise of ordinary care should have known, that if the bolts were removed which fastened the beam to the upright, the beam would be carried upward by the dropping of the counterweights attached to the cable which was connected with the beam. It is true that the appellee testified that he did not know that if he took out the bolts fastening the beam to the upright the beam would go up, and there is some evidence in the record tending to show that because of his lack of experience with work of this nature and his want of capacity to understand fully what would result from his action in removing the bolts, he did not appreciate the danger to which he was exposed. We think, however, the clear weight of the evidence is that he knew the situation fully, knew that the counterweights were not blocked or fastened, and did understand and appreciate what would happen by the removal of the bolts, viz., the raising of the beam because the counterweights attached to the cable would draw it upward, and the consequent danger which he incurred of being thrown from the ladder. The evidence bearing upon this point is that of many witnesses besides that of appellee himself (which alone covers 159 typewritten pages of the record) and that of his witnesses Blaskin and Marsden, and is very voluminous. From a careful reading of it all we are unable to escape the conclusion, even if it be conceded

that he did not assume the risk, that the clear preponderance of the proof is that appellant's injury resulted from his own want of ordinary care for his personal safety.

Numerous cases are cited by his counsel, which are claimed to be similar in their facts to this case, and to be controlling in favor of appellee, but in our opinion they may and can be clearly distinguished from this case, and therefore are not of controlling importance. Among others are certain cases which hold in effect that if the servant, although he knew of a defect or danger to which he was exposed in the line of his duty, and which was due to the negligence of his employer, but he did not recall, or forgot, at the precise moment of being injured, the fact of such defect or danger, the question of whether he was guilty of negligence which would bar his recovery, was one for the jury, and it could not be said that his failure to recall or his forgetting it would preclude his recovery on the ground of contributory negligence. Some of such cases are Kane v. Ry. Co., 128 U. S. 96; Fiero v. R. R. Co., 71 Hun, 213; Ry. Co. v. Strickler, 51 Md. 70; Greenleaf v. Ry. Co., 33 Ia. 52–9. We however think that these cases should not control here because of the decisions of our own Supreme Court, which hold in effect as stated above in this opinion. See Heerey, Mueller, Wierzbicky and Cichowicz cases, *supra*.

Because the verdict on the question of contributory negligence of appellee is clearly and manifestly against the weight of the evidence, and the other errors mentioned, the judgment is reversed and the cause remanded.

*Reversed and remanded.*