## A. M. Rothschild & Company v. David S. Levy, Adm'r.

### Gen. No. 11,713.

1. RECOVERY—*consistency of allegations and proof essential to.* It is a rule of pleading, subject to no exception, that a party must recover, if at all, on and according to the case which he has made for himself in his declaration. He is not permitted to make one case for himself by his allegations and to recover on a different cause made by his proof.

2. MINOR—*care to be exercised by.* A minor is bound to the exercise of such care for his safety as may reasonably be expected of one of his age and intelligence.

3. DUE CARE—*exercise of, not presumed.* The exercise of due care upon the part of one who has lost his life in an accident, will not be presumed from the instinct prompting the preservation of life.

4. ELEVATOR—*when one boarding, guilty of negligence.* One who seeks to board a moving elevator is guilty of contributory negligence.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1904. Reversed. Opinion filed January 23, 1905.

**Statement by the Court.** This is an appeal from a judgment for $4,000 recovered by appellee, administrator of the estate of Morris Levy, deceased, in a suit against appellant, for alleged negligence, by reason of which appellee's intestate, Morris Levy, lost his life. The declaration contains three counts. It is averred, in substance, in each of the counts, that appellant was running a large retail store, and in the store had and operated an elevator for the convenience of such persons as might call at the store on business; and, in the first and second counts, it is averred that the deceased was in the store for the purpose of transacting business with an intelligence office kept by the appellant in its store. The negligence averred in each count is, in substance, as follows:

1st count. While the said elevator was stopped on the fifth floor of said building, said Morris Levy attempted to get upon said elevator, and it was defendant's duty to give him sufficient time to get on it, and not to start it till he was on it, and to use all reasonable precaution, to the end

A. M. Rothschild & Co. v. Levy.

that no injury would occur to him by reason of his attempting to get on the elevator; yet defendant, by its servants, while said deceased was getting on the elevator, and exercising due care for his own safety, did suddenly and negligently start the elevator, etc.

2nd count.    This count avers " that while the elevator was stopped on the fifth floor of said building, he attempted to get upon said elevator," and after averring the defendant's duty, avers that the defendant did not stop said elevator on the said fifth floor a sufficient time to allow the deceased to get on it, and did not close the door before starting the same; but while deceased was endeavoring to get on the elevator, in the exercise of due care, suddenly and negligently started the elevator, before closing the gate in front of it.

3rd count.    In this, as in the previous counts, it is averred that the elevator stopped and the deceased attempted to get on it, and also avers that the defendant did not take reasonable precautions to prevent injury to deceased " by reason of his attempting to get on said elevator," did not close the gate leading to said elevator, and did suddenly and negligently start the same.

In each count it is averred, in substance, that by reason of the negligence averred in the count, the deceased was caused to fall from the elevator, and down the elevator shaft, and was so injured that he died.

The defendant pleaded the general issue.    At the close of the plaintiff's evidence, defendant's attorney moved to strike out the plaintiff's evidence on the ground of variance between the declaration and the evidence, claiming that the evidence showed that the deceased attempted to get on the elevator after it had started, and when it was in motion, which motion the court overruled.    Defendant's attorney then, and also at the close of all the evidence, moved the court to peremptorily instruct the jury to find for the defendant, and presented to the court, to be given to the jury, instructions to that effect, but the court refused said motions and instructions.    The jury found for

the plaintiff and assessed his damages at the sum of $5,000. On motion for a new trial, the plaintiff remitted $1,000 from the verdict, and the court, after overruling motions for a new trial and in arrest of judgment, rendered judgment for $4,000.

It appears from the argument of the plaintiff's counsel that there have been two trials of the cause.

The defendant put in evidence a plat of the fifth floor of appellant's store, drawn to a scale of eight feet to the inch, in respect to the correctness of which there is no controversy. Two elevators are shown on the plat, each about ten feet square and fronting south, and having a door two feet ten and one-half inches in width. The elevators are side by side, with a north and south partition between them. The accident happened at the east elevator. Just opposite the south end of the partition between the elevators, and a short distance therefrom, there is a post. The floor is 135 feet from west to east. West and south of the elevators is a large dining room, which is referred to in the evidence as a restaurant. From the west side of the door opening of the east elevator to the door of the dining room is about twenty-five feet. East and south of that elevator there is a large kitchen. The deceased, at the time of the accident, which occurred about 3:45 o'clock in the afternoon of February 20, 1899, was eight years and eleven months old. His mother, Mrs. Susie Levy, testified that he was a bright boy and healthy; that he went to school and was in the fourth grade. On being asked whether he was as capable of taking care of himself as a man, she answered, " Yes, sir; he was very bright; I could send him anywhere." She testified that, on the day of the accident, she told him to go, after school, to Mrs. Newton, at Rothschild's intelligence office, and that he used to go backward and forward to Rothschild & Co. Mrs. Sarah Newton testified that at the time of the accident she worked for defendant, and had charge of its employment office, which was about the center of the fifth floor of the building, and about sixty feet west of the restaurant; that witness had sent a girl to

A. M. Rothschild & Co. v. Levy.

Mrs. Levy, and that the deceased came to her about 3:30 or 3:45 o'clock with a message from his mother, to the effect that she was satisfied with the girl; that deceased then left witness' office, which was partitioned, and she did not see him afterward.

So far as appears from the evidence, there were only two two witnesses of the accident: Miss Maggie Alder, whose deposition was taken by the plaintiff, and Earl V. Hewitt, who was called by the defendant. By the request of plaintiff's counsel we have read Miss Alder's testimony in the record, although we think the abstract of it is substantially correct. Miss Alder testified, in substance, that she saw the accident about 3:45 o'clock in the afternoon, just as she was coming out of the restaurant on the fifth floor; that about ten minutes before that time she had seen the deceased standing at the restaurant door, eating candy, and that he was playing and dancing around on the floor; that he was a very small boy and appeared to be about ten years old; that when the accident happened she was five or six feet from the elevator, and was going to take it and go up; that before the accident she paid no attention to deceased; that she did not notice whether the elevator stopped at the fifth floor or not, and did not see the deceased start to get on; also that she did not see any passengers get off at the fifth floor. The first witness saw, in connection with the accident, was the boy falling. "The child was getting on the elevator, with one foot and the toe of the other foot on the elevator, and slipped sideways, and the toe of the other foot slipped off, and he slipped feet first down the elevator shaft. It was the deceased, Morris Levy. His right foot was on the elevator and the toe of the left foot slipped first, kind of threw the other foot down, and the left foot slipped first, and he fell down the elevator shaft, feet first. The elevator was in motion when the accident happened." It appears from this witness' evidence that the deceased fell to the floor and slipped thence into the elevator shaft. She also testified that when the elevator was going up, and the boy was trying to get

on, she noticed the door of the elevator was half closed. This witness testified positively and frequently that when she first saw the deceased attempting to get on the elevator, as she described, the elevator was moving up. On cross-examination of the witness, the following occurred:

Q. "You didn't see the boy, as I understand you, from the time you observed him playing until you saw him falling?" A. "No, I didn't pay any attention to him."

Q. "You saw him sliding down feet first?" A. "No, until I saw him sliding down feet first."

Q. "The first thing that you saw of this accident was the boy slipping and the elevator moving one or two feet above the floor?"

A. "Yes, about one or two feet above the floor." She further testified: "He was in the act of getting on when I first observed the elevator and the boy. At that time the elevator was about two feet above the floor, and the elevator door was partly closed, and the elevator man had his hand on the door, in the act of closing it. The elevator was moving, and the boy was trying to get on the elevator while it was moving." Examined on re-direct by plaintiff's attorney, the witness testified: "The elevator was moving while the boy was getting on; that was when I first observed it, and the elevator then had gone one or two feet above the floor. The boy was trying to get on as the elevator was moving. I didn't notice at the time he started to get on. All I noticed was when the elevator was about two feet above the floor, when he was trying to get on." She testified, on re-direct, that the elevator was going slowly. The following question was asked and answer given, in the examination in chief of the witness:

Q. "Do you know whether the boy was standing before the elevator shaft, at the time when the elevator reached the fifth floor, at this time, going up?" A. "Yes, he was standing at the elevator door waiting." On re-cross she said that the greater part of the boy's body was outside of the elevator at the time she observed him.

That the elevator was a passenger one is not controverted.

A. M. Rothschild & Co. v. Levy.

Miss Alder testified that she knew from what she had heard that no one was allowed to go up to the sixth floor except employees, but she went up there sometimes; that she was not so notified by any of the managers, and saw no signs to that effect. It does not appear from the evidence that the deceased had any notice of this restriction, in any way, nor does it appear that he had any business on the sixth floor.

Earl V. Hewitt, called by defendant, testified in substance, that he was twenty-three years of age, and was running the elevator at the time of the accident, and had been running it for four months, and that he saw the accident; that defendant's two elevators were slow elevators, and ran from the basement to the sixth floor; they always ran to the sixth floor except in the holiday season; that they ran to the sixth floor from the bottom in about two minutes; but that only employees were carried above the fifth floor; that he did not stop at every floor, but only when there were passengers to get on or off; that the accident happened between 3:30 and 4 o'clock. He stood at the right of the door, and operated the lever with his right hand, and used his left hand to open and close the door. He ran the elevator up to the fifth floor, and had in it two ladies who wanted to get out there, and he stopped and let them out, and saw a couple of ladies standing near the end of the elevators, and he said "Going up." Describing the accident, the witness said: "Then I started the car, and, at the same time, started to close the gate, and just as I had the gate very nearly closed, the boy darted in from somewhere—I don't know where; I hadn't seen him before —and he got his right foot on the elevator, and I tried to catch the boy and tried to stop the elevator at the same time. I could not, and the boy fell down between the car and the floor, fell down the shaft. When I saw the boy dart in there, my left hand was on the gate, closing the gate. I released it from the gate and tried to catch the boy." Witness then testified: The elevator was about one foot above the floor when the boy darted in, and got to about the height

of the gate when witness succeeded in stopping it. When witness said "Going up," his head was partly out of the gate, and he was looking southward around the post, toward the grocery department. Up to a man's chest the cage is woven with wide iron strips, and witness, from where he was looking, could not see down, close to the cage on the outside. From the chest upward the cage was open work. The door was ten inches to a foot from being closed when the boy darted in. The ladies who got out of the elevator and started toward the grocery department, had, witness thinks, got out of his sight at the time he started the elevator up from the fifth floor. On cross-examination the witness testified, in substance, that he stopped at the fifth floor just long enough to let his two passengers out, and to say " Going up," and that the two lady passengers who got out were, he would say, sixty to seventy-five feet away when he started up, and were south and west of the other or west elevator. He then testified as follows: " When my elevator came to a standstill these other women stood near the other elevator. I couldn't see the grocery department on account of that partition. I started the elevator and started to close the door at the same time. The elevator was nine inches to a foot above the floor when the boy struck it, and was going up. The boy was facing me, and was trying to get into the elevator. I didn't notice what he did with his hands, and didn't see him until his foot was on the elevator. Did not see where he came from. He must have come from the west."

LACKNER, BUTZ & MILLER and C. E. HECKLER, for appellant.

THEODORE G. CASE and CRATTY BROS., JARVIS & LATIMER, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

In each count of the declaration it is averred that plaintiff's intestate attempted to get on the elevator while it was stopped. This is a material allegation, and, in view of the

pleadings, proof thereof is necessary to a recovery, and so the court, in effect, instructed the jury. There is no conflict between the testimony of the only two witnesses of the accident, as to whether the deceased attempted to get on the elevator while it was in motion, ascending from the fifth to the sixth floor of the building. Miss Alder, whose deposition was taken by the plaintiff, testified, as shown in the previous statement : " He was in the act of getting on when I first observed the elevator and the boy. At that time the elevator was about two feet above the floor, and the elevator door was partly closed, and the elevator man had his hand on the door, in the act of closing it, and the boy was attempting to get in. The elevator was moving and the boy was trying to get on the elevator while it was moving." This was on cross-examination, and on re-direct plaintiff's attorney, evidently aware of the importance of the question whether the deceased attempted to get on the elevator while it was moving, re-examined her on that question, with the result that she emphasized her former evidence. Other parts of her evidence show that it was impossible for her to have seen the deceased attempt to get on when the elevator was stopped at the fifth floor. In her examination in chief, she testified : " I didn't notice whether the elevator had stopped at the fifth floor or not." Again : Q. " Do you know whether or not the elevator, which the boy afterwards attempted to enter, came up at any time while you stood there, prior to the time at which the accident occurred ? " " No, I didn't know whether it came up or not." Earl V. Hewitt, the elevator man, testified positively that when the elevator had started from the fifth floor, and was about one foot above the floor, and when the door of the elevator was within ten inches to a foot of being closed, the deceased darted in from somewhere, and got his right foot on the elevator; and he tried to catch him, etc. Also, that before the deceased so darted in, he had not seen him. Counsel for plaintiff say that there is a conflict between the testimony of these witnesses, and urge that when the evidence is conflicting or irreconcilable, the

question is one for the jury, and should not be disturbed
by a reviewing court. A conflict is when the testimony of
one witness is contrary to the testimony of another. But
there is no conflict between the testimony of Miss Alder
that she first saw the deceased when he was attempting to
get on the elevator, when it was moving above the fifth
floor, when the deceased was falling, as she says, and Hew-
itt's testimony that the first he saw of the deceased he was
trying to get on the elevator while it was about a foot
above the fifth floor and moving. In the early case of
Moss v. Johnson, 22 Ill. 633, the court say : " It is a rule
in pleading, subject to no exception, that a party must re-
cover, if at all, on, and according to, the case he has made
for himself in his declaration. He is not permitted to make
one case for himself, by his allegations, and recover on a
different case made by the proof." Ib. 640. This rule has
been uniformly followed in this State. Lake St. El. Rd.
Co. v. Shaw, 203 Ill. 39; W. C. St. R R. Co. v. Kautz, 89 Ill.
App. 309; Wabash W. Ry. Co. v. Friedman, 146 Ill. 583;
Ebsery v. Chicago City Ry. Co., 164 Ill. 518. In the case
last cited it was averred in the declaration that the car was
stopped and not moving when the plaintiff boarded it, and
attempted to find a seat, and that it was suddenly started
and moved, and that he fell from the car while it was sta-
tionary and not moving. The jury found the defendant
guilty, but found, in answer to a special interrogatory, that
the car, at the time the plaintiff fell, was in motion. The
trial court, on motion of the defendant, gave judgment for
the defendant, on the jury's answer to the special interrog-
atory, and this court approved the judgment.

Counsel, however, lay stress on the testimony of Miss
Alder that she saw the deceased standing at the door of
the elevator, waiting, when the elevator reached the fifth
floor. This evidence is clearly inconsistent with her former
testimony, that she did not notice when the elevator reached
the fifth floor, and that she did not is apparent from her
testimony that she did not see the two ladies, who came
up to the fifth floor on the elevator, get off at that floor.

A. M. Rothschild & Co. v. Levy.

If she did not see the elevator reach the fifth floor, how could she know the deceased was standing at the door when the elevator reached the floor? Hewitt testified that they did, and the contrary is not claimed by counsel. But, on the hypothesis that the deceased was standing at the door, as Miss Alder testified, it cannot legitimately be inferred that he undertook to enter the elevator while it was stationary, in view of Hewitt's testimony, with which Miss Alder's is not inconsistent, that the deceased attempted to get in the elevator when it was about a foot above the fifth floor, in its ascent to the sixth floor. Counsel contend that Hewitt's evidence that he did not see the deceased is incredible. He was in the cage of the elevator; the boy was small, and may have been standing west of the east elevator and close to the west one. Miss Alder says she stood five or six feet from the elevator in question, and, if so, must have had an unobstructed view of it, yet she did not see it stop at the fifth floor, nor did she see the two passengers alight from it at that floor. Counsel say that Hewitt's testimony that the elevator was moving slowly is not true, yet Miss Alder testified, in her examination by plaintiff's attorney, that the elevator was moving slowly. Without intimating that Miss Alder intentionally gave any false testimony, we must say that Hewitt's testimony is much more consistent than hers. She stated frankly that her recollection was not as good as at the time of the accident, adding, " I have forgotten quite a bit," which words are not abstracted; also that she was not absolutely certain as to all facts she testified to, and that by reason of the circumstances having occurred so long ago, she might be mistaken as to some of the facts.

But counsel contend that the evidence warrants a recovery under the third count of the declaration, which avers that " while the said Morris Levy was attempting to get upon the said elevator," etc., the defendant, by its servants, did not close the elevator door before starting the elevator, and suddenly, etc., started the same. This count clearly avers, as do the other counts, that the elevator was stopped

when the deceased attempted to get on it, and that the accident occurred by reason of the elevator being suddenly started, while at rest. The trial court, as evidenced by the instructions, so construed the declaration. In Block v. Swift & Co., 161 Ill. 107, it appeared that the plaintiff attempted to board an elevator while it was ascending and was injured. The court say : " There was no duty on the part of the plaintiff to get upon the elevator while ascending, and his injury resulted from his attempt. That his act, in making such attempt, was the cause of his injury, and that the act was negligence, does not admit of controversy." The evidence for the plaintiff shows that the deceased had no business on the sixth floor, and the fact that he attempted to board a car ascending to that floor, after the elevator man hallooed, " Going up," is inexplicable, except, perhaps, on the hypothesis of sudden and thoughtless impulse. The deceased was eight years and eleven months old at the time of his death, which occurred a few minutes after the accident. He was a bright, intelligent boy, in the fourth grade at school. His mother testifies that she could send him anywhere, and that he was as capable of taking care of himself as a man. He was, therefore, bound to the exercise of such care for his personal safety as might reasonably be expected of one of his age and intelligence. R. R. Co. v. Delaney, 82 Ill. 198, 201. We fail to find in the record any evidence that the deceased exercised such care. Counsel for plaintiff urge that there is no presumption that the deceased unnecessarily exposed himself to danger, which is true, and that due care on his part may be presumed from the instinct prompting to the preservation of life, to which we do not assent.

In C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492, 499, the court say : " It is true that where the fact is not susceptible of direct proof it may be inferred from the circumstances, and the plaintiff may be aided by the presumption that a person does not voluntarily incur danger or the risk of death. But that does not affect the question where the burden of proof rests. In a case where a person is killed

and there are no eye-witnesses to the accident, there is no dispute that the burden of proof rests on the plaintiff to show due care on the part of the deceased, but if there are no eye-witnesses and no direct proof he is entitled to the benefit of the presumption."

In this case it was incumbent on the plaintiff to prove that the deceased attempted to board the elevator when it was at rest. This the plaintiff not only failed to do, but the direct evidence is that he attempted to board it when it was ascending from the fifth to the sixth floor of the defendant's building. The case of C. T. T. R. R. Co. v. Schmelling, 197 Ill. 619, relied on by defendant's counsel, in so far as it holds that a party, by asking an instruction which in effect submits a question to the jury, cannot urge that there was no evidence on the question sufficient to go to the jury, has been overruled in Ill. Central R. R. Co. v. Swift, a recent unreported case. There being no proof of an essential element of the plaintiff's case, the court should have directed a verdict for the defendant.

The judgment will be reversed.

*Reversed.*