## Walter Elliott, Appellant, v. Illinois Central Railroad Company, Appellee.

### Gen. No. 42,233.

Opinion filed March 10, 1943.

GILBERT T. GRAHAM and RAYMOND W. BEACH, both of Chicago, for appellant.

JOHN W. FREELS and HERBERT J. DEANY, both of Chicago, for appellee; VERNON W. FOSTER and CHARLES A. HELSELL, both of Chicago, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by Walter Elliott, plaintiff, from an order entered by the court on defendant's motion to strike the complaint of the plaintiff for insufficiency, which was sustained, whereupon the plaintiff elected to stand on his complaint. Judgment was rendered for the defendant and against the plaintiff.

Plaintiff filed his complaint consisting of two counts. Count 1 is an action for injuries to the plaintiff, as a result of the negligence of the defendant in maintaining one of the methods of entrance to defendant's station, when being used by the plaintiff intending to become a passenger of the defendant. Count 2 is the same as count 1 except that it alleges plaintiff was a passenger, instead of intending to become a passenger, and charges the defendant with the degree of care a common carrier must exercise in behalf of passengers.

The defendant filed a motion to strike the complaint, claiming each of the counts of the complaint are insufficient in law to charge a cause of action against the defendant.

Count 1 of the complaint alleges:

1. That the defendant before, at and after the accident was a common carrier of passengers for hire, operating a street railroad at street level, running east and west on 71st street between Stony Island and Blackstone avenues. There are two public roadways on 71st street, one on each side of defendant's tracks. Westbound trains use the north track, and eastbound trains use the south track.

2. The defendant used and maintained a wooden platform between the tracks, the approximate height of the floor of the cars, the platform extending from Stony Island avenue to Blackstone avenue. The Blackstone avenue station is at or near the west end

of the platform, steps at or near the west end of the platform extend from the platform down to the street. Blackstone avenue runs south but not north of 71st street. At the bottom of the steps there is a crosswalk between the inner curbs of the two 71st street public roadways, the east sidewalk on Blackstone avenue is a considerable distance east of the crosswalk.

3. That before and at the time of the accident there were traffic or train gates at the intersection of Blackstone avenue and East 71st street, operated by the defendant, the traffic or train gate south of the platform and on the east side of Blackstone avenue is attached to a post or support between the south rail of the eastbound tracks and the north curb of the South 71st street roadway. When the gate is lowered the west end extends across the crosswalk or sidewalk south of the tracks and halfway across Blackstone avenue, and a short extension of the traffic or train gate extends east of the post or support between the south rail of the south track and the north curb of the south roadway. There is a traffic or train gate on the opposite corner, and when both gates are lowered they are opposite each other and a short distance apart and when trains are at the platform receiving and discharging passengers, and before departing, the gates are lowered.

4. That before, at and after the accident on weekdays between 8:15 and 9:15 a. m. 10 to 15 trains arrived at, and departed from the platform on the north tracks, and 5 to 10 trains on the south tracks, and during this hour the traffic or train gates were down a considerable portion of the time.

5. For many years before and at the time of the accident large numbers of people intending to become passengers of defendant entered this station between the hours of 8:15 and 9:15 a. m. when said traffic or train gates were lowered, by walking from the north curb of the South 71st street roadway, around the

short east end of the traffic or train gates, across the south track and then upon the sidewalk or crosswalk west of the steps and then up the steps, through said station, and on the platform, boarding defendant's trains; defendant permitted, acquiesced in, and consented to this method or manner of entering the station and platform; plaintiff had been entering the station in this manner, when the gates were down, for two years prior to September 5, 1940; this manner or custom of entering the station was certain, uniform, general, and continuous, and was well known to both the plaintiff and the defendant; for two years prior thereto and at the time of the injury to the plaintiff, this was the general mode, and people intending to become passengers made habitual use of this manner of ingress to said station and platform; defendant encouraged and induced people intending to become passengers of defendant to use this manner of ingress to the station by holding trains at the platform after gates were down while such persons went around the east end of the traffic or train gate and across said south track and into the station, all of this being well known to the plaintiff and the defendant; on September 5, 1940, said plaintiff had a ticket of defendant's with a number of unused rides; plaintiff arrived at the Blackstone avenue station between 8:15 and 9:15 a. m.; the traffic or train gates were down; plaintiff proceeded to enter the station by walking around the east end of the traffic or train gate, and across the southbound track, and then intended to proceed up the steps, plaintiff intending to become a passenger of defendant, this being one of the usual and customary methods of entering the station as above set forth; that plaintiff immediately before and at the time he was injured was in the exercise of ordinary care and caution for his own safety.

6. At the time of the accident, defendant, its agents, or servants, did one or more of the following

acts, and failed to perform its duty in one or more of the following respects, and caused certain injuries to plaintiff:

(a) Negligently and carelessly filled the area between the north curb of the south roadway of 71st street and the south side of the platform at or near East 71st street and South Blackstone avenue, which includes the south track of said defendant, adjoining and immediately east of the east end of said traffic gate or train gate, with track or railroad ballast, a considerable portion of which was pieces of loose rocks and stones, creating an unsafe and dangerous condition for the use of people intending to become passengers of said defendant when using said method of ingress to said Blackstone avenue station.

(b) Negligently failed to provide a safe passageway or entrance to Blackstone avenue station when entering the station when the gates were lowered, by going around the east end of the traffic gate or train gate situated at or near the southwest corner of said platform, said place and manner of entrance being in an unsafe and dangerous condition for the use of persons intending to become passengers, which was or should have been known by defendant by the use of due care and diligence.

(c) Negligently and carelessly failed and neglected to provide safe and suitable entrances for the use of persons intending to become passengers of the defendant at the Blackstone avenue station.

7. As a direct and proximate result of the negligence and carelessness of the defendant, and of the failure of the defendant to discharge its duty to plaintiff, plaintiff on September 5, 1940, with the intention of becoming a passenger of defendant, proceeded to enter said Blackstone avenue station in accordance with the manner and custom of entering the station as encouraged and induced by defendant, by starting east of the east end of said traffic or train gate and

while walking across the area between the north curb of said South 71st street roadway and the southwest corner of said platform at or near East 71st street and Blackstone avenue, necessarily and unavoidably slipped and stumbled over or upon certain pieces of loose rock or stones so negligently placed and allowed to remain by the defendant in said area, and severely injured his leg and ankle, and was otherwise injured.

8. The complaint then sets out the damages of the plaintiff.

Count 2 is the same as count 1 except that it alleges that the plaintiff was a passenger instead of alleging the plaintiff intended to become a passenger and charges the defendant must exercise the highest degree of care by reason of plaintiff being a passenger.

The motion to strike asserts that the counts of the complaint are substantially insufficient in law to charge a cause of action.

The motion alleges that count 1, subparagraphs (a), (b) and (c) of paragraph 6 contain the only language which purports to allege any negligence or violation of duty on behalf of defendant, and are insufficient in the following particulars:

1. Subparagraphs (a) and (b) of paragraph 6 do not contain an actionable charge of negligence because there was no duty on defendant to provide a safe convenient walkway down its track so that pedestrians could ignore and go around the crossing gates lowered as a safety measure for the express purpose of preventing their presence on the track while trains were moving on or about to move thereover.

2. The crossing gates were erected at the regular crosswalk over the track to prevent people from crossing over or going upon the track when trains were moving into or out of the station. Defendant's failure to construct a smooth walkway around the gate as an invitation to people to ignore the warning given by the gates when lowered was not negligence.

3. There is no allegation in subparagraphs (a) and (b) that the crosswalk was not smooth, wide, adequate or sufficient in every respect. Except for the space so set aside as a crosswalk, there was no duty on defendant to fill in between its tracks so that people desiring to ignore the lowered gates could walk around them.

4. While defendant owed a duty to people crossing its tracks on the regular crosswalk, it did not owe a similar duty to people who were not on the crosswalk, but who for their own convenience chose to walk along the tracks rather than merely cross them.

5. In walking along the tracks at point other than the crosswalk in an effort to defeat the safety purpose of the crossing gates lowered to prevent his entrance on the track, plaintiff was a trespasser to whom defendant owed no duty except not to injure him wilfully.

6. There was no duty as alleged in subparagraph 6 (b) to provide a safe passageway to go around the lowered traffic gate.

7. The complaint charges that plaintiff had used this crossing almost daily for two years. If, therefore, the situation provided an unsafe and dangerous condition, as alleged in subparagraph 6 (b) it was just as obvious to the plaintiff as it was to the defendant, and if plaintiff was injured as a result of stepping into a clearly dangerous situation, his own negligence in doing so was the sole proximate cause of his injuries.

8. The allegations of subparagraph 6 (c) are mere legal conclusions and are so general, indefinite, vague and uncertain as not to advise this defendant of the nature of plaintiff's alleged cause of action or in what particular the defendant failed or neglected to provide safe and suitable entrances for the use of persons intending to become passengers.

We find that part of the motion to strike in italics alleges facts not pleaded in the complaint. New matter or facts cannot be pleaded in a motion to strike.

The motion to strike count 2 adopts the same grounds as the motion to strike count 1.

Then as additional reasons it is alleged that each of said subparagraphs purports to place a greater burden upon the defendant than does the law. Each refers to the "highest degree of care in view of the mode of conveyance adopted consistent with the practical operation of its road and the conduct of its business as a common carrier.". Since plaintiff purports to allege only negligence in the maintenance of the station building and its environs, and does not allege that he was injured in any way as the result of transportation functions of defendant, the defendant only owed him the duty of ordinary not the highest degree of care, as alleged in each of these three subparagraphs.

Plaintiff's theory upon the questions that are involved in this case is that the way used by the plaintiff at the time of his injuries was at that time and for a long time prior thereto had been a way or path in general, continuous and habitual use by the public intending to become passengers on the defendant's trains. This way was on the premises of the defendant and was customarily used by the public as an approach to the platform of the defendant's station. This use of the way by the public was well known to plaintiff and the defendant, and the defendant consented, invited, induced and encouraged persons intending to become passengers, or passengers, to use this way of approach to this passenger platform while holding its trains while prospective passengers, or passengers, were making their way to the trains over this passageway. That under such circumstances it became and was the duty of the defendant to keep this

way reasonably safe for the use of passengers and persons intending to become passengers of the defendant.

The plaintiff's theory is also that the reason the defendant lowered the traffic gates as trains were about to pass Blackstone avenue was not to prevent passengers, or prospective passengers, from entering the station in the manner alleged in the complaint; if this had been one of the original purposes of the traffic gates, it had long since been abandoned by the defendant; that the defendant is charged with actionable negligence in the complaint, the plaintiff was not guilty of contributory negligence in using this regular and customary method of entrance, and was not a trespasser when entering or about to enter the defendant's station as alleged in the complaint, and the complaint states a good cause of action.

The defendant's theory is that plaintiff was a trespasser, and defendant owed plaintiff no duty except not to injure him wilfully, and that notwithstanding the daily, continuous use of this way of entrance to the defendant's station, defendant owed no duty to the public regardless of the condition of this way of entrance and was under no duty to make this way safe. When defendant lowered the gates, it discharged its legal obligations to the public intending to enter its station. The defendant also contends the plaintiff was walking along the tracks and not across the tracks; the plaintiff was guilty of contributory negligence when using this passageway to their station on September 5, 1940, although there is no allegation in the complaint that the then condition was in existence prior to September 5, 1940.

Plaintiff contends that inasmuch as this case came before the court on the complaint and motion to strike, there being no evidence introduced or considered at the trial, it is only necessary to consider if the complaint states a cause of action, and the legal ground

in the motion to strike stating why the complaint does not state a cause of action.

Plaintiff contends that the defendant, in its motion to strike, in addition to setting out alleged legal reasons why the complaint does not state a good cause of action, pleads certain facts not pleaded in the complaint, and that such facts cannot be considered in a motion to strike in passing upon the issues in this case.

There is no allegation in the complaint that the crossing gates were erected at the regular crosswalk over the track to prevent people from crossing over or upon the track when trains were moving into or out of the station, as alleged in paragraph 2 of the motion to strike. If the gates were originally erected for that purpose, this purpose had been abandoned by the defendant when it permitted the public to walk around the end of the gate as one of the methods of entering its Blackstone avenue station. At the time of the accident, plaintiff suggests, if he were permitted to indulge in assumption of facts, it appears that the crossing gates were used to prevent vehicle traffic from crossing over the tracks when trains were moving into or out of the station, and further urges that there is no allegation in the complaint that people for their own convenience chose to walk along the tracks rather than merely across them as alleged in paragraph 4 of the motion to strike. The allegations in the complaint are that they crossed the tracks for the purpose of entering the defendant's station. There is no allegation in the complaint that people walked along the tracks at a point other than the crosswalk in an effort to defeat the safety purpose of the crossing gates lowered to prevent entrance on the track, as alleged in paragraph 5 of the motion to strike. There is no allegation in the complaint as to why the gates were lowered as heretofore set forth, and, further, there is no allegation in paragraph 6 of the complaint that the dangerous condition of the passageway was

in existence for two years prior to the time of the accident, or that this dangerous condition had existed at any time prior to the accident as defendant contends in paragraph 7 of its motion to strike. Plaintiff contends that the facts alleged in the complaint, all of which are admitted by the motion to strike, set forth a good cause of action.

It is understood that section 45 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.045] provides that all objections to pleading heretofore raised by demurrer shall be raised by motion. There is no question that a motion to strike is the same as a demurrer under the former practice. Plaintiff cites, in support of his theory that the allegations of fact contained in the demurrer will be disregarded, *Jennings v. County of Peoria,* 196 Ill. App. 195, and urges that it is not the province of a demurrer to set out new facts, and that a demurrer involves only such facts as are alleged in the pleadings demurred to, and cites *Wood v. Papendick,* 268 Ill. 383. It is further contended that in the instant case, in passing on the sufficiency of the complaint, the court can only consider the facts alleged in the complaint and whether the facts are sufficient in law to state a cause of action, any allegation of fact being new matter contained in a motion to strike should be disregarded.

The defendant, in the reply to the statement which is made by the plaintiff, admits that a motion to strike, being similar to the former demurrer, cannot set out new facts, and further suggests that, though no such claim was made in the court below, counsel for plaintiff now complain that defendant's motion to strike pleaded new facts and sets out the alleged new facts in italics. There were no new facts pleaded in the motion to strike. The statements in italics refer to the gates as having been lowered to prevent people crossing the tracks when trains were moving into or out of the station and referred to any persons going

around the lowered gates as walking along the tracks, and answers this suggestion of the plaintiff by saying that the statements that are criticized are both based literally on the facts pleaded by the plaintiff. Reference is made 11 times in count 1 alone to "traffic or train" gates which were lowered when trains were at the platform receiving or discharging passengers. The complaint describes in detail the gate on the southeast corner around which plaintiff says he was going when he fell. This gate is attached to a post south of the rail and east of the crosswalk or sidewalk. The west end of the gate extends across the sidewalk leading to the station steps and half way across the roadway of Blackstone avenue. There is a short arm of the gate extending east of the post. Since the complaint charges that the gates extend across the sidewalk as well as the roadway, it is hardly pleading new facts to say it was intended to prevent the people from using the sidewalk when the trains were moving into and out of the station. Plaintiff says to that, that it might be assumed that the gates were intended to prevent vehicle traffic from crossing the tracks; the defendant contends, however, that vehicles were not mentioned at any time in plaintiff's complaint, but, as noted above, references are constantly made to "traffic gates" which extended across and blocked the sidewalk.

The plaintiff suggests on the points that are involved in this litigation, that if one method of entrance to and exit from the station is provided by the carrier, and there is also a second exit and entrance in use by custom and usage for a considerable period of time, and the carrier has knowledge of this and acquiesces in such use, the carrier must use ordinary care and caution to keep the second method of exit and entrance reasonably safe. The plaintiff, in support of the suggestion that was offered, cites the case of *Wood v. Illinois Cent. R. Co.*, 167 Ill. App. 644. In that case the

accident happened at 39th street on a Michigan Central train. The tracks and station were in charge of the Illinois Central. The station was poorly lighted. The trains stopped to allow passengers of through trains to alight and pass over a long unlighted platform. There was a suburban train going south and the Michigan Central train was going north. The plaintiff, a passenger, stepped off the Michigan Central train while still in motion before it arrived at the platform and was injured. It was dark, the plaintiff did not know the train was moving and the train proceeded 50 feet before it stopped. The court in that case held that the railroad company was under no obligation to light its entire right of way but if it habitually stopped its trains at some point where there was no station and there were no proper provisions for safety and injuries resulted from failure to light the place at which passengers were authorized by invitation, express or implied, to alight, this is a question for the jury. Upon that theory the plaintiff herein suggests that in passing upon like questions such questions are questions for the jury to pass upon in determining the issues as between the parties.

Then again plaintiff cites the case of *Chicago Terminal Transfer R. Co. v. Schmelling*, 197 Ill. 619. In that case the plaintiff stepped from the train on the tracks and was about to proceed across the tracks as he had been doing for a year and a half before the accident. Another railroad crossed the tracks just south of where the plaintiff alighted, the tracks curved to the north and it was difficult to see trains coming from the north, and the plaintiff was struck by the southbound train. The plaintiff recovered from the injuries which were sustained. The court in that case stated that it was the duty of the defendant to provide a safe means of access to and from the defendant's station, stating "The tracks around the platform or places for entering and leaving the cars . . . should be made safe and kept so."

Plaintiff further cites a number of cases upon like questions and it would appear from his suggestion that by the above cases, and textbooks, it is clearly established that when another method of entrance, on the carriers premises, is recognized and used as pleaded in the complaint, it is the duty of the carrier to keep such method of entrance in a reasonably safe condition, and that the complaint pleaded a good cause of action against the defendant.

The sole contention is that the carrier must use due care in the operation of its business, and that in a suit against a carrier the plaintiff may prove a custom of entrance or exit or some other custom which has to be considered in passing upon the issues. Upon a like question that was involved in the instant case the plaintiff cites the case of *Ohio & Mississippi Ry. Co. v. Allender,* 59 Ill. App. 620, and there the question was as to whether or not the defendant was negligent. It was held that if there was a custom to board a moving train from the wrong side by boarding the express car this was proper to be considered, but there is no proof of such custom. Plaintiff also cites the cases of *Redin v. Alton G. & St. L. T. Co.,* 173 Ill. App. 491, and *Chicago B. & Q. R. Co. v. Czaja,* 59 Ill. App. 21, and there is good reason for the suggestion that these cases establish the fact that if by custom certain methods are adopted by common carriers they must operate and conduct their business with reasonable care and caution in view of the established and adopted custom, whether the custom is a method of entrance to a station as in the instant case, or applies to something else in the operation of the carrier's business.

It was suggested, however, by the defendant that, unlike the circumstances in the case of *Missouri K. & T. R. Co. of Texas v. Criswell,* 101 Tex. 399, 108 S. W. 806, in the instant case the plaintiff was not a stranger, that he had used the station daily for two years; that there were not two platforms constructed by defend-

ant for different uses which would tend to confuse, but only one walkway, and instead of waiting to use that walkway in safety the plaintiff chose to go around the safety gate and walk on an open unpaved railroad track with loose stone ballast between the rails; that plaintiff was not a confused stranger walking over one of two apparently similar platforms or ways, but was a highly trained office and sales manager.

The question here involved is whether the facts tend to justify recovery by the plaintiff, and that usually is for a jury to pass upon and to determine by a verdict which they feel is justified by the facts. There are a number of other similar questions, and we feel from the facts in this case, the authorities that have been submitted, and the rule upon such controverted questions, that the matter should be submitted to a jury for the purpose of passing upon them.

So when we consider all the facts as they appear, it is necessary to prove that there was a custom of entrance and exit or some other custom which has to be considered in passing on the issue of whether the carrier used due care in the operation of its business.

Of course one of the questions is: Was the plaintiff a trespasser? From the facts as they appear in this record, if the plaintiff used an established method of entrance to the station which was known to the plaintiff, then of course as a fact he was not a trespasser, and a good suggestion is offered here by the plaintiff in which attention is called to the fact that the complaint alleges that the plaintiff walked across the tracks at the most a few feet from the crosswalk, using the customary well established and general method of entrance, and that the complaint does not allege that the plaintiff walked along the tracks, and in walking across the tracks to enter the station the plaintiff was not a trespasser, when using the regular method of entrance to the station.

The defendant in the instant case seeks to raise an issue of facts in their motion to strike, by stating that this condition had existed for two years during which time the plaintiff had regularly used this method of entrance. There is no allegation in the complaint that this dangerous condition of the passageway had existed for any particular time other than the day in question. If this dangerous condition of the passageway had existed for some time prior thereto, as a matter of law plaintiff would not be guilty of contributory negligence. When the authorities are applied to the facts pleaded in the complaint the question of contributory negligence is a question of fact and not a question of law.

The defendant, however, seeks to answer complainant's point which refers to proof of a custom of entrance to or exit from the station and in which several cases are cited, none of which, as the defendant contends, have anything to do with either an entrance or an exit.

Defendant also points to the fact that certain of the cases cited for the plaintiff referred to passengers on trains or street cars, who were injured because of failure to comply with an alleged known custom in the operation of the trains or cars, one case involving a custom of permitting employees to ride on a freight elevator, and another a custom of permitting stock shippers to ride on engine footboards in the stock yards. It does not appear that what has been suggested would aid us in reaching the conclusion suggested by the defendant.

In answer to plaintiff's argument as to proof of custom of entrance or exit to the station, the defendant has cited *Cunningham v. Toledo, St. L. & W. R. Co.,* 260 Ill. 589, and comments that under the pleadings the plaintiff was not crossing tracks in a public street or on planked tracks adjacent thereto, but was east of

the east crosswalk on Blackstone and was on the tracks at a point where they were ballasted with loose rocks and not prepared for use as a walk. To this the plaintiff has replied that this case has no bearing upon the case at bar; that plaintiff's case as set forth in the complaint is not for injuries caused by being struck by a moving train. Plaintiff was crossing the tracks adjoining the crosswalk and the portion of the tracks used by the plaintiff was a recognized method of entrance to the defendant's station in constant use.

Of the questions that were involved, as suggested by the plaintiff, we have no question as to whether the plaintiff, having a valid, unused ticket, and using one of the established methods of entrance on the defendant's premises to defendant's station, was a passenger. In the case of *Chicago Terminal Transfer R. Co. v. Schmelling*, 197 Ill. 619, the plaintiff had alighted from the train and was crossing the track, leaving the railroad premises. The court, on page 627 of the opinion states:

"it was the duty of the defendant to provide a safe means of access to and from its station at 26th street for the use of its passengers; and the plaintiff had a right to assume, that the place, adopted for discharging its passengers at that point, was safe."

In the instant case the plaintiff had been using this method of entrance for two years and was on the railroad property with a valid ticket with unused rides, and on the authority quoted contends he was a passenger when on the railroad's property proceeding to make entrance to its train. The defendant, however, quotes from the Supreme Court of Illinois opinion in *Chicago & E. I. R. Co. v. Jennings*, 190 Ill. 478, as follows:

"It is uniformly held that the passenger must have placed himself under the care of the railroad company, so that the circumstances will warrant an understand-

ing on the part of the company that he is a passenger and under its care as such. Although it is not necessary that fare should have been paid or an express contract made, it is necessary that a person should be under the control of a carrier in order to be entitled to its care as a passenger. (2 Wood on Railway Law, 1037.) He must be at some place under the control of the carrier and provided for passengers, so that it may exercise the high degree of care exacted from it; and the mere fact that an intending passenger has a ticket and intends to take a train does not create the relation of carrier and passenger.''

So when we come to pass upon the questions that are involved, we are of the opinion that the complaint, the subject of this discussion, states a cause of action and raises issues of fact that must be disposed of in a trial of the case and not on a motion to strike, and that for the foregoing reason there is reversible error in the judgment order of the trial court, and the judgment of the trial court is reversed and the cause remanded to the superior court for trial.

*Reversed and remanded for trial.*

BURKE, P. J., and KILEY, J., concur.