Swift and Company, Plaintiff-Appellee, v. Vaughn E. Dollahan and Elizabeth L. Dollahan, Defendants-Appellants.

Gen. No. 9,949.

Opinion filed June 7, 1954. Released for publication June 23, 1954.

H. F. SIMONSON, and RICHARD W. PATERSON, both of Champaign, for appellants.

THOMAS & MULLIKEN, of Champaign, for appellee.

MR. PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This is an action at law to recover for money loaned and claimed to be due. The complaint consisted of two counts, not expressly stated to be in the alternative. In Count I plaintiff sought recovery upon a written instrument, attached to the complaint as an exhibit and incorporated in Count I, purporting on its face to be a promissory note of defendants dated January 9, 1951 in the sum of $2,050, payable to the order of plaintiff

and bearing interest at the rate of 6% per annum. Count II erroneously described in plaintiff's brief as a common count, was a demand for repayment of $2,050 allegedly loaned on January 9, 1951 by plaintiff to defendants and not repaid despite demand, together with interest at 6% per annum. The cause was tried before a jury which returned a verdict for defendants on Count I and for plaintiff on Count II. The court entered judgment on the verdict for defendants on Count I and after remittitur of $276.34 for plaintiff on Count II in the amount of $2,065.52. Defendants' motion for a directed verdict as to Count II, upon which motion the court had reserved its ruling, was denied, as were defendants' alternative motions for judgment notwithstanding the verdict, in arrest of judgment and for new trial. Thereupon defendants appealed from the judgment against them and from the denial of their post-trial motions. No post-trial motions were filed with respect to, and no appeal was taken by plaintiff from the judgment in favor of defendants.

Plaintiff alleged in Count I that on January 9, 1951 it loaned defendants the sum of $2,050 and thereupon defendants delivered their promissory note in the amount payable to plaintiff's order and bearing interest at 6% per annum. A copy of the alleged note was attached as an exhibit and by reference thereto, made a part of Count I. The document was received in evidence on the trial. It is a printed form of note and provides in pertinent part:

"I, (We) jointly and severally, promise to pay to the order of Swift & Company, a corporation, at Decatur, Illinois for value received the sum of Two Thousand Fifty and No/100 Dollars in the following installments:

Surcharge of Twenty Cents (20¢) per gallon on all bulk and package, plus a volume discount of Fifteen

Cents (.15¢) per gallon on bulk and Ten Cents (.10¢) on package on ice cream purchased until note is paid. With all costs of collection including ——————— per cent attorneys fee if collected by law or through an attorney.

"Each of the aforesaid installments shall bear interest at the rate of Six (6%) percent per annum from date until paid.

"Should default be made by me (us) in the payment of any installment, as above provided, then the entire balance remaining due and unpaid upon said note shall at the option of the holder hereof forthwith become due and payable . . . .

. . .

Vaughn E. Dollahan (Seal)

(Maker's Signature)

Elizabeth L. Dollahan (Seal)

(Maker's Signature)"

It was alleged that plaintiff was the owner of the note; that it was entitled to reasonable attorney's fee in the sum of $200 for effecting collection of the note; that no part of the principal had been paid; that interest had accrued but was unpaid; and that the unpaid principal and interest were past due. There were no allegations with respect to acceleration of the note or the matter of default, if any, on the part of the defendants in making installment payments as provided in the instrument, or any other material breach on the part of defendants, giving rise to a right in plaintiff to compel payment in a lump sum and in cash.

In Count II, which was characterized by the pleader as an "additional" count, plaintiff alleged the making of a loan to defendants on January 9, 1951 in the sum

of $2,050; that thereupon defendants promised to repay the same upon demand with interest at the rate of 6% per annum from the date of the loan; that on August 14, 1952 plaintiff made demand upon defendants for payment of the loan with interest, without avail; and that the principal amount of the loan and interest thereon was due and unpaid. No reference was made in Count II to the alleged note attached to the complaint as an exhibit and incorporated in Count I.

Each count prayed for judgment in the sum of $2,281.74. Defendants moved to strike and dismiss the entire complaint. The motion made no distinction between the two counts. While defendants claim in their briefs in this court that the complaint, especially Count II, is defective in various respects, the only ground, other than a general statement that the complaint was not plain and concise, urged in the motion to dismiss was that the complaint was predicated on the instrument attached as an exhibit to Count I; that the instrument was by its terms payable in installments by means of ice cream purchase surcharges and discounts; that no facts were pleaded in explanation of the apparent failure of plaintiff to effect collection of the note pursuant to its terms; and that the action was prematurely brought.

 Defendants' assertion in their motion, repeated and argued at length in their briefs in this court, that Count II, as well as Count I, was predicated upon the instrument attached as an exhibit to Count I, could not be availed of by motion to dismiss. Count II did not refer to the exhibit and was on its face a statement of a claim separate and distinct from that stated in Count I, and was complete in itself without reference to the exhibit attached to and limited to Count I. On motion to dismiss the sufficiency of Count II was properly tested without reference to Count I or the exhibit thereto. Insofar as defendants sought by their

assertions in their motion to dismiss to characterize Count II as one based on the exhibit, they were relying upon alleged matters of fact *de hors* the pleading and thus were guilty of pleading facts and demurring at the same time. *Elliott v. Illinois Central R. Co.*, 318 Ill. App. 112, 119. A motion to dismiss, as was true of the demurrer under our former practice, raises only a question of law as to the legal sufficiency of the pleading to which it is directed. All well pleaded allegations of fact are admitted by the motion. *Beadles v. Servel, Inc.*, 344 Ill. App. 133, 138. Since the facts stated in the pleading are admitted by the motion, the maker of the motion cannot at the same time controvert the admitted facts, either by assertions in his motion or by affidavit or other means. Matters of fact may be presented only by answer or by motion for summary judgment or in an appropriate case (of which the action here involved is not one), by motion under section 48 of the Civil Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 172; Jones Ill. Stats. Ann. 104.048]. *Hansen v. Raleigh*, 391 Ill. 536, 548.

██ The motion to dismiss was properly denied as to Count II. Though somewhat abbreviated, Count II stated the essentials of a cause of action within the requirements of the Civil Practice Act. (Civil Practice Act, Secs. 4, 31, 33, 42; Smith-Hurd Anno. Stats., ch. 110, pars. 128, 155, 157, 166 [Jones Ill. Stats. Ann. 104.004, 104.031, 104.033, 104.042].) In any event, it was not vulnerable to the ground of alleged defect asserted in defendants' motion to dismiss. We express no opinion upon the action of the court in overruling the motion to dismiss Count I. Defects, if any, in that count are immaterial and academic in this court inasmuch as the judgment as to that count was not only in favor of defendants but no appeal was taken from the judgment.

Defendants did not stand by their motion to dismiss but elected to file an answer to both counts. In answer to Count I they denied that there had been a loan but admitted that they had signed the instrument attached as an exhibit to Count I and denied that it was a "promissory" note. They averred that by the express terms of the instrument it had been agreed that they were to pay plaintiff the sum of $2,050, not in a lump sum or in cash, but only in installments by means of surcharge and discount credits on purchases of ice cream to be made by them from the plaintiff. They further averred that concurrent with the execution by them of the alleged note, the plaintiff had agreed to and in fact did furnish defendants with certain ice cream storage and dispensing equipment to enable defendants to store and dispense ice cream to be purchased from plaintiff; but that plaintiff had subsequently wrongfully repossessed the equipment in a replevin suit, thus making it impossible for defendants to repay the principal sum advanced to them by the purchase of ice cream from plaintiff as provided in the alleged note.

Although the judgment in favor of defendants on Count I is not before us on this appeal, we have stated the substance of that count and of defendants' answer thereto because defendants rest several of their contentions with respect to Count II upon the premise that the judgment as to Count I is *res judicata* of the issues as to Count II.

In their answer to Count II defendants denied they had made a loan from plaintiff as alleged but admitted that plaintiff had advanced $2,050 toward the purchase by them of equipment to be used by them to establish a business for the storage, dispensing and sale of ice cream to be purchased by them from plaintiff. They admitted that plaintiff had made demand upon them for payment of the $2,050. They further averred that

584

the $2,050 advance was made upon and subject to the terms and conditions for payment recited in the exhibit attached to and made a part of Count I of the complaint. The averments of their answer to Count I respecting the furnishing and the subsequent allegedly wrongful repossession by plaintiff of ice cream storage and dispensing equipment, were repeated in condensed form as a defense to Count II.

Plaintiff filed a reply to defendants' answer. As to the answer to Count I, plaintiff took no issue as to the averments of the answer setting forth the alleged agreement of plaintiff to furnish ice cream storage and dispensing equipment, nor with the averments that plaintiff had repossessed that equipment. However, plaintiff denied in general terms that it had made it impossible for defendants to purchase ice cream from plaintiff or for defendants to pay plaintiff the $2,050 through the purchase of ice cream or by any other means. As to Count II, plaintiff denied that the advance of $2,050 "was for any particular purpose." Plaintiff also denied that it had wrongfully repossessed any equipment from defendants or that it prevented them from purchasing ice cream from plaintiff or made it impossible for defendants to pay the $2,050 "as shown in" the exhibit attached to the complaint. No express response was made to the averment in the answer that the advance of $2,050 to defendants was made upon the terms and subject to the conditions expressed in the instrument declared upon in Count I.

It appears from the foregoing summary of the pleadings that defendants agreed as to Count I and charged as to Count II that the rights and liabilities of the parties were based upon an express contract, but disagreed with plaintiff as to the terms of that contract. ▇▇▇▇ Defendants contend that the failure of plaintiff to deny or otherwise take issue with or explain the averments of their answer that the $2,050 was

advanced on the terms and conditions of the instrument attached to and made a part of Count I of the complaint, constitutes an admission of those averments. Defendants rely in this regard upon the provisions of section 32 of the Civil Practice Act (Smith-Hurd Anno. Stats., ch. 110, par. 156 [Jones Ill. Stats. Ann. 104.032]) that "When new matter by way of defense or counterclaim is pleaded in the answer, a reply shall be filed by the plaintiff." Be this as it may, and we are disposed to agree with defendants' contention, it does not serve to supply ground for reversal. As above stated, defendants also contend that the instrument is but a part of the alleged over-all agreement actually made by the parties, thus presenting a question of fact for the jury. Also at issue and to be determined by the jury, was the question whether either or both parties were guilty of any material breach of the agreement between them, and if so, the effect thereof upon their respective rights and liabilities.

There are some incidental points of pleading, of which we think it would be well to dispose before proceeding to a statement of the evidence.

 Defendants argue that Count II is fatally defective and therefore insufficient to sustain the judgment thereon in favor of plaintiff because plaintiff failed, despite the requirement of section 36 of the Civil Practice Act (Smith-Hurd Anno. Stats., ch. 110, par. 160 [Jones Ill. Stats. Ann. 104.036]), to attach thereto a copy of the alleged note upon which defendants contend Count II is predicated. For reasons elsewhere stated in this opinion, this contention is not well founded in law but in any event, even if it had appeared from the face of Count II that the suit was upon a written instrument and that therefore section 36 applied, the point would not have been available to defendants in this court. It was not raised in defendants' motion to dismiss; and even if it had been,

586

the failure of plaintiff to attach a copy of the instrument sued on in compliance with section 36 would have been waived by defendants' filing' of their answer or would have been cured by the intendment of the verdict.

 Defendants also argue that both counts of the complaint were fatally defective in that they were not expressly alleged in the alternative. We are of the opinion that there is no merit to this contention. We hold that the description of Count II as an additional count is appropriate. So far as appears from the face of the complaint, each count asserted a separate and distinct cause of action. Despite the similarity of the amount involved and the pertinent dates, no inconsistency between the counts appeared from the face of the pleading. But assuming that alternative allegations would have been appropriate, the failure of plaintiff so to plead would be of no consequence on this appeal. Defendants waived the point, assuming it was well taken, by failing to specify it in their motion to dismiss. Furthermore, the point would also have been waived by the fact defendants filed an answer after their motion to dismiss had been overruled. In any event, the defect was not one of substance and would have been cured by intendment of the verdict. *Cottrell v. Gerson*, 371 Ill. 174, 179. We conceive, though we need not now hold, that an absence of alternative allegations may well serve to render a pleading so fatally or fundamentally defective as to render it vulnerable to a motion in arrest of judgment or for judgment notwithstanding the verdict. Suffice it to say that is not the case here.

 By way of seeking to answer defendants' contention that Count II was in fact an action upon an express contract rather than a common count upon an implied contract, plaintiff argues that Count II is a common count for money lent and that it is proper

under the Civil Practice Act to plead in a multiple-count complaint a common count which is appropriate to the proof. We agree that an appropriate common count or other count based on the theory of implied contract may be joined in the same complaint with a count on an express contract so as to afford relief to plaintiff should the proof be insufficient to establish the express contract but be sufficient to warrant relief on the implied contract. *Moreen v. Estate of Carlson*, 365 Ill. 482, 492; *Velsicol Corp. v. Hyman*, 405 Ill. 352, 367; *Anderson v. Biesman & Carrick Co.*, 287 Ill. App. 507.

However, in our opinion Count II is not a common count because it is alleged therein that defendants promised repayment "with interest at six per-centum (6%) per annum." The promise implied at common law to repay money loaned was limited to repayment of principal (1 Chitty's Pleading (1874), p. 356–357). Interest was not recoverable at common law except by express contract. (*Sammis v. Clark*, 13 Ill. 544, 546; *Turk v. City of Chicago*, 352 Ill. 171, 177; *City of Pekin v. Reynolds*, 31 Ill. 529, 532.) Nor is interest recoverable today except upon express contract or as provided by statute, and if the statute is relied upon the rate is 5% rather than 6% per annum. *Hitt v. Allen*, 13 Ill. 592, 596; *Totten v. Totten*, 294 Ill. 70, 90. An allegation of a promise to repay money loaned with interest at 6% per annum is on the face of the pleading an action on an express contract because interest at that rate is recoverable in an action at law only by virtue of an express contract, there being no statutory right to recover interest at the 6% rate. In any event, Count II stated a cause of action within the requirements of the Civil Practice Act, whether characterized from its face as based on an express rather than an implied contract. (Civil Practice Act, secs. 4, 31, 33, 42; Smith-Hurd Anno. Stats., ch. 110,

588

pars. 128, 155, 157 and 166 [Jones Ill. Stats. Ann. 104.004, 104.031, 104.033, 104.042].)

■■■ Furthermore, plaintiff's reply to defendants' answer to Count II was consistent with the theory that Count II was based on an express rather than an implied contract. As heretofore stated, plaintiff did not take issue with the averment in defendants' answer that the $2,050 was advanced upon the terms and subjects of the conditions recited in the exhibit attached to the complaint. The reply also denied that plaintiff had prevented defendant from purchasing ice cream or had made it impossible for them to pay the amount provided for in the instrument attached to the complaint.

■■■■ The evidence, consisting of various documents and the testimony of defendants and of various employees of plaintiff and of other witnesses, was conflicting; was in some respects inconsistent, inconclusive, self-impeaching and difficult to resolve; and questions of credibility, especially with respect to certain aspects of the testimony of defendants, were presented. We are not at liberty to disturb the verdict of the jury in the absence of conviction on our part that the verdict is against the manifest weight of the evidence. From the study of the record, we are of the opinion that the verdict of the jury on Count II is well within the evidence adduced.

It appears that some time in the latter part of 1950 defendants were constructing a building for the operation of a roller-skating rink at a point near Urbana, Illinois, known as "Five Corners," in conjunction with which it was their intention to operate a restaurant. One Smith, an agent of plaintiff, solicited defendants' prospective ice cream business. Talk of possible financial assistance by plaintiff ensued. On December 18, 1950 the parties entered into a written contract whereby plaintiff agreed to sell and deliver, and defendants

589

agreed to buy and receive, the entire requirements of defendants for ice cream and ice cream products for a period of three years, but in no event was less than a total of 4,000 gallons of ice cream to be purchased during that period. The contract further provided that "at any time balance on loan and fountain is paid this contract is void."

Smith told Mr. Dollahan that plaintiff would furnish a fountain and an ice cream cabinet for dispensing and storing ice cream so long as the defendants handled plaintiff's ice cream products. He testified that he meant that Swift & Company would purchase a soda fountain and ice cream freezer cabinet and put them in defendants' place of business provided defendants purchased all their ice cream products from plaintiff, the fountain to remain the property of plaintiff. The soda fountain and an ice cream freezer cabinet, along with other restaurant equipment, were selected by defendants at the Swain & Myers Company at Decatur in the presence of Mr. Smith and subsequently installed in defendants' place of business. While the testimony of defendants and of plaintiff's agents is not as clear and precise as it might be as to the purchase and ownership of the items of equipment, it appears from an appraisal of the entire record that the fountain and freezer cabinet were purchased by and remained the property of plaintiff and that the remaining equipment, consisting of dishes, counter stools, etc. was purchased by defendants on a conditional sale contract. It also appears that defendants had the right, though not required, to purchase the fountain and cabinet from plaintiff by cash payment or by surcharge and discount credits on ice cream purchases. No documentary evidence pertaining to the title to any of the equipment was offered by either party and the only reference in any of the documentary evidence to

590

the soda fountain is contained in the ice cream contract above described.

At the time the equipment was selected plaintiff agreed through Smith to advance $2,050 to defendants to apply upon the purchase price of the items purchased by defendants. Despite conflicts in the testimony of the several witnesses, it fairly appears from the record that, though not reduced to writing, it was the understanding of defendants and of plaintiff's agent that, assuming defendants undertook and continued to purchase all their ice cream products requirements from plaintiff, they were to be permitted to repay plaintiff the money advanced and ultimately to purchase the fountain and freezer cabinet in installments measured by ice cream gallonage surcharges and discounts on ice cream purchased.

Several weeks later, on January 9, 1951, Smith made a trip to defendants' home in Champaign, Illinois. He delivered to defendants, plaintiff's check in the sum of $2,050, payable jointly to the order of defendants and Swain & Myers, Inc. Defendants endorsed the check and returned it to Smith, who in turn delivered it to Swain & Myers who applied the proceeds on account of the down payment on the equipment which had been purchased by defendants. At the time of his visit to defendants' home, Smith also submitted to them a document, the terms and form of which were identical with the exhibit attached to plaintiff's complaint except that it contained no provisions for payment of interest. Defendants signed the instrument. However, because the document, through oversight on Smith's part, did not provide for interest, Smith caused the defendants on January 19, 1951 to execute the instrument heretofore described which was attached as an exhibit to plaintiff's complaint. The document executed January 19, 1951 was substituted for the similar document executed January 9, 1951.

The restaurant did not open for business until the month of June 1951. Defendants had in the meantime leased the premises to a tenant operator. Plaintiff delivered ice cream to the tenant as ordered from time to time until June 13, 1952 when defendants closed the restaurant. The restaurant operation was not successful. The initial tenant-operator was succeeded successively by two others, the last of whom abandoned operations in June of 1952. Only 518½ gallons of bulk and 34 gallons of package ice cream were purchased and dispensed during the one-year period the restaurant was in operation and during the 1½ years which had elapsed subsequent to the execution of the ice cream purchase requirements contract of December 18, 1950, which called for the purchase of a minimum of 4,000 gallons of ice cream products over the three-year period ending December 18, 1953. As ice cream was delivered and payment made by the various tenant restaurant operators, plaintiff credited defendants' loan account with the ice cream gallonage surcharges and discounts as provided in the note instrument of January 9, 1951. However, the volume of purchases was insufficient to meet the interest charges provided for in the note instrument and there were no credits against the principal.

At the outset the restaurant was operated in conjunction with a roller-skating rink. Dollahan testified that on February 7, 1952 the rink was closed down and the structure remodeled for use as a bowling alley; that the bowling alley was installed in due course and went into operation in June 1952; and that the restaurant remained in operation during the period of reconstruction, remodeling and installation. Dollahan also testified on cross-examination that the bowling alley installation commenced in June 1952.

In any event, the last of the three tenant restaurant operators ceased operations in mid-June 1952. The

defendants closed the restaurant. It remained closed until some time after plaintiff commenced its action in September. Plaintiff repossessed its fountain and ice cream freezer cabinet in October. It is not altogether clear from Dollahan's testimony whether the restaurant closed for lack of a tenant or because of some alleged bowling alley remodeling work which Dollahan testified commenced in June 1952, or because of the bowling alley installation commenced some time subsequent to February 7, 1952. We are of the opinion the weight of the evidence is that the remodeling and the bowling alley installation was completed by June 1952 and the closing of the restaurant was because the third and last tenant ceased operations and Dollahan was unable to obtain another tenant. In any event, the closing was the voluntary act of defendants.

Dollahan testified that immediately prior to the closing of the restaurant he informed a representative of the plaintiff, one McKane, who had succeeded Smith as plaintiff's road man in the area, that he proposed to remodel the bowling alley and that he planned to close the restaurant for that reason and that McKane responded that he thought that course would be satisfactory to plaintiff. There was no proof as to McKane's authority to accept or approve Dollahan's proposal. Dollahan first fixed the alleged conversation with McKane as having taken place in April or May. Then on cross-examination he fixed it as of June 18, 1952, the day the restaurant closed. Dollahan admitted that at the time he talked with McKane he was already attempting to obtain another tenant to continue the restaurant operation and had negotiated with one prospect who had its own ice cream plant and therefore would not be purchasing ice cream from plaintiff. He testified he related that fact to McKane and suggested that he be permitted to pay the $2,050 by an initial installment of $1,000, followed by fixed monthly

payments. Dollahan stated that McKane was not pleased with Dollahan's proposal and that therefore Dollahan abandoned negotiations with the prospective tenant. Defendants did not call the prospective tenant as a witness. Apparently Dollahan's efforts to interest some other persons to undertake to operate the restaurant were unavailing for no tenant was obtained and defendants elected not to operate the restaurant themselves.

Dollahan also testified that McKane agreed to consult his superiors in plaintiff's Decatur office and that he later reported to Dollahan that he had done so and that plaintiff would not undertake to object to the temporary closing down of the restaurant. The manager of plaintiff's Decatur office, as well as his first assistant, both testified that neither McKane nor Dollahan discussed the subject with them. Their testimony is corroborated and the testimony of Dollahan is contradicted by other testimony which established that plaintiff regarded the closing of the restaurant as a material breach of the arrangements and agreements with defendants which served to terminate the ice cream requirements contract and to accelerate the payment of the $2,050 loan.

The assistant manager, acting on behalf of plaintiff, visited defendants at their home in Champaign on August 14, 1952 and made demand for payment of the $2,050. Mr. Dollahan was advised by plaintiff's Decatur manager that plaintiff would not reinstate the ice cream purchase requirements contract of defendants and that it intended to repossess its fountain and ice cream freezer cabinet. Dollahan conferred with plaintiff's counsel in Champaign on several occasions and made several trips to Decatur to confer with plaintiff's Decatur manager in an effort to induce plaintiff to reinstate the ice cream requirements contract and to defer, if not abandon altogether, the repossession of

594

the soda fountain and the freezer cabinet. Plaintiff's manager testified that Dollahan sought time within which he hoped to obtain another tenant. His requests were refused and this action, as well as a replevin suit to secure possession of the fountain and ice cream freezer cabinet were commenced.

 Defendants moved to compel plaintiff to elect between the two counts in the complaint to be submitted to the jury. Though no order denying the motion appears in the record both counts were submitted to the jury. The action of the court was correct. Defendants' claim that the court erred in submitting both counts to the jury is predicated upon the erroneous premise that the two counts were fundamentally inconsistent. As we have heretofore pointed out, the counts were merely predicated upon different theories of recovery. Each stated a cause of action. The right to plead more than one version of a claim by way of separate counts in order to accommodate to the proofs which may be adduced is well established. *Wanless v. Peabody Coal Co.*, 294 Ill. App. 401, 408; *Moreen v. Estate of Carlson, supra; Anderson v. Biesman & Carrick Co., supra.* This is not to say, however, that a plaintiff may not be required to elect between inconsistent counts such as for example as where plaintiff's cause of action depends upon an election of remedies, such as between rescission of a contract on the one hand and affirmance thereof on the other. *McCullough v. Schuberth*, 334 Ill. App. 333, 336. But that is not the case here.

 Defendants then argue that it appears from the evidence that both counts were based upon the alleged note and the ice cream requirements purchase contract and therefore the verdict of the jury and the unappealed judgment in their favor on Count I are either conclusive of Count II or the verdict and judgment in favor of plaintiff on Count II is fatally incon-

sistent with the verdict and judgment in defendants' favor on Count I. At first blush this point would appear to have merit but upon a full consideration of the record and the evidence it falls short. Count I was carefully limited by plaintiff to the note instrument of January 9, 1951. On the other hand, Count II alleged in broad terms a loan by plaintiff to defendant. The evidence adduced consisted of the note instrument of January 9, 1951, the check of the same date payable to defendants and Swain & Myers, Inc., the ice cream purchase requirements contract of December 18, 1950, and the ledger account of plaintiff, pertaining to defendants' account and containing a record of a charge of $2,050, various interest charges and surcharges and discount credits, which ledger was testified to be accurate and to have been regularly kept. In addition, testimony was had of defendants and of various agents of plaintiff as to the overall agreement and understanding between them, and the course of conduct of the parties during the period the restaurant was in operation. On the evidence adduced the jury could and we think did properly conclude that plaintiff made out a case under Count II but failed to sustain its claim of the somewhat limited express contract pleaded in Count I.

The court's instruction as to the issues made by the pleadings carefully and properly summarized the two counts, the answers thereto and defendants' reply to each answer. In our opinion there was sufficient range in the proofs adduced by plaintiff and defendants to present a question of fact for the jury as to what agreement was actually entered into by the parties, whether the agreement, if any, was breached in a material respect by either of them, and, if so, what rights and liabilities followed. We are of the opinion that a contract and understanding between the parties cannot be spelled out in any one of the several documents

introduced in evidence but appears from a consideration of all the documents and of the testimony. It appears from the preponderance of the evidence that plaintiff advanced the $2,050 to defendants and supplied them with an ice cream soda fountain and freezer cabinet with the understanding and upon the agreement of defendants that they would purchase all their requirements of ice cream products from plaintiff and that so long as they continued to operate the restaurant and to dispense plaintiff's ice cream products in their restaurant that the loan could be repaid by means of ice cream gallonage surcharge payments and discount credits, provided further that defendants purchased at least 4,000 gallons of ice cream products in the three-year period commencing December 18, 1950 and remained in operation.

Defendants breached the agreement in that through no fault of plaintiff they closed the restaurant and ceased operations. We do not believe that the operation of the restaurant by tenants rather than by defendants themselves or the limited volume of ice cream product purchases constituted material breaches of the letter of the agreement and understanding between the parties though they may well have constituted breaches of the spirit thereof.

The inability of defendants to obtain a tenant operator commencing in June, 1952 did not excuse defendants from their duty to operate the restaurant themselves or by their agents and make purchases of ice cream products from plaintiff in the due course of business. Defendants' course of conduct commencing in June 1952 gave rise to a right in plaintiff to terminate or rescind the arrangement with defendants and to bring suit for the balance of the money loaned as well as to repossess by replevin, the soda fountain and freezer cabinet. It was admitted, if not actually asserted by defendants, that they are unable

597

to pay the loan by means of ice cream purchases. In our opinion the record establishes that their inability in that regard is due to their fault and not to any improper conduct of plaintiff.

 It is clear that defendants received the $2,050 from plaintiffs in January 1951 and have failed to date to repay any portion thereof. Defendants do not deny their indebtedness to plaintiffs but seek to avoid payment upon the claim that technically they are entitled to insist on a method of payment which if applied will either result in their being required to make no payments whatever or place the extent, rate and time of payment entirely in defendants' control. Defendants' position does not comport with equity and good conscience and does not appeal to this court any more than it appears to have appealed to the jury and the trial court.

 The jury allowed recovery of interest and credited ice cream gallonage surcharges and discounts against principal. Defendants do not contend that plaintiff is not entitled to recover interest if it is otherwise entitled to recover principal. The verdict in favor of plaintiff is within the range of and is not against the manifest weight of the evidence. Count II is legally sufficient to support the judgment. It is entirely sufficient in that regard when aided by the subsequent pleadings and by the verdict. *Cottrell v. Gerson,* 371 Ill. 174, 179. The court properly denied defendants' motions for directed verdict, in arrest of judgment and for judgment notwithstanding the verdict.

 We do not know and we are perhaps not at liberty to speculate as to what influenced the jury to return its verdict for defendants on Count I, but plaintiff's assertion in that count of a right to recover attorney's fees and the instruction of the court, given at the request of defendants, that the note instrument of January 9, 1951 "is not a promissory note" may

have led the jury to reject plaintiff's claim under Count I. Certainly the instruction was unfortunately worded. It was in substance an instruction on an abstract principle of law and as is often the case may have had a tendency to mislead the jury. *Burke v. Zwick,* 299 Ill. App. 558, 561. Taken with the instruction defining the issues made by the pleadings as to Count I and in which the court advised the jury that plaintiff was bringing suit under that count on a "note" the impression is gained that plaintiff failed to prove the existence of a "note" as alleged in Count I. The refinement of the technical distinction between a "promissory note," meaning commercial paper, and a "promissory note" in the lay sense, meaning a written promise or contract to pay to the order of the payee is not one readily to be appreciated by a jury without an explanation of the significance of the distinction as applied to the case before the jury. Each is a promissory note. Each is a contract. *Britton on Bills and Notes* (1943), sec. 5. The "note" involved in this case is not a negotiable "promissory note" due to the uncertainty in its terms as to time and manner of payment. *Britton, supra,* ch. 1. But it is a promissory note in the noncommercial sense. *Britton, supra,* sec. 4. We are not unmindful that plaintiff's counsel erroneously concede that the document in question is not a "promissory note," but the concession does not change the record and we must and do decide this case on the record rather than on the theories of counsel or those indulged by the court below.

Defendants' counsel question several of the instructions given at the request of plaintiff. We have considered the defendants' contentions in the light of all the instructions. We are of the opinion and so hold that the instructions when considered in a series and as a whole, with the exception noted by us as to the instruction respecting the "promissory note," presented

the issues and the applicable legal principles under Count II fairly and succinctly and that in any event none of the instructions was prejudicial to defendants.

 We have carefully considered the record, arguments and briefs of the parties with a view to substantial justice in this case and we are of the undoubted opinion that the verdict and judgment were right. Even taking the evidence in a light most favorable to defendants, we are of the opinion the judgment should be affirmed. In our view, therefore, no other verdict and judgment properly could have been rendered consistent with the proofs. While the record is not free of error, substantial justice has been done and a retrial of this cause could only result in another verdict and judgment for plaintiff. Under these circumstances, the duty of this court to affirm is clear. *Standard Oil Co. of Indiana v. Burkhartsmeier Cooperage Co.*, 333 Ill. App. 338, 355–356; *Rapers v. Holmes*, 292 Ill. App. 116, 123.

It is therefore ordered that the judgment appealed be and is hereby affirmed.

*Affirmed.*